# Wheeling.

## CAMDEN et al. v. HARRIS et al.

### Decided November 1, 1879.

1879
Special Term.

Where neither of the parties to a controversy about the title to a tract of land, has obtained the *legal* title thereto, but their titles are both purely *equitable*, and emanate from the same source, and each party is equally innocent, and each has been equally diligent, he who has the *elder equity*, must receive the legal title.

Appeal from and *supersedeas* to a decree of the circuit court of the county of Gilmer, rendered on the 22d day of November, 1870, in a cause in said court then pending, wherein Richard P. Camden and others were plaintiffs, and William Harris and others were defendants, allowed upon the petition of A. S. Core.

Hon. Robert S. Brown, late judge of the circuit court for Gilmer county, rendered the judgment appealed from.

MOORE, JUDGE, furnishes the following statement of the case:

Weden Hoffman and Richard P. Camden on the 13th day of April, in the year 1850, brought a suit in chancery in the circuit court of Gilmer county, against William Harris, Andrew S. Core, Patrick Raferty and George W. Hardman, and filed their bill therein at the May rules, 1850, by which the plaintiffs allege a purchase by said Raferty from one Hiram Riddle of a certain tract of land of two hundred and seventy-two

acres, on the head of Spence fork of Hughes river, in Ritchie county, and obtained a deed of conveyance from him therefor; that Raferty sold said land to Hardman, who has paid all the purchase-money to Raferty; that Raferty gave to him a title-bond for the conveyance of said land when said purchase-money should be paid, and delivered said bond to Hardman, and that as the money was paid, Hardman was entitled to a conveyance; that Hardman sold and agreed to convey said land, by covenants of general warranty, to William Harris, and gave him a title-bond binding himself to convey when the purchase-money should be paid, and all the purchase-money being now paid Harris is entitled to a conveyance; that said Harris, on the 21st day of June, 1849, sold said land to complainants for $180.00 to be paid by said Harris accepting as part payment an acquittance and discharge of the judgment claimed in a bill of complainants filed in another suit against John Harris and others, having for its object the sale of a tract of one hundred acres of land on Grass run, sold by said John Harris to said William Harris, together with the interest on said judgment, and the costs in said chancery suit up to date of said sale; and the balance of said $180.00 was to be paid by complainants in equal amounts in one and two years; that said William Harris gave to complainants his title-bond, exhibited with the bill, setting out the foregoing facts, and binding himself to procure a regular connection and chain of title, and convey the same to complainants, with covenants of general warranty by September 20, 1849, and place complainants in possession of said land; (the bill purports to exhibit a copy of the bill and judgment referred to in said title-bond, together with a taxation of the costs and statement of the amount due thereon, but the clerk who copied the record states that they are not on file with the papers of this cause, nor can they be found in the office.)

The bill proceeds to allege as follows: That "by this exhibit it will be seen that at the time of making said

1879
Special Term.

Camden et al.
v.
Harris et al.

contract there remained but the sum of $1.53 to be paid to said Harris, which sum is here tendered, and any other sum of money which your honor may decree to be paid, your orators are willing and ready to pay. Your orators show that from the amount and nature of the improvements which they have made on said lands, they cannot be compensated in damages, and therefore pray a specific execution of their contract for said land. Your orators show that the said William Harris, after he had entered into the aforesaid title-bond, again sold the said land to a certain —— Core, of the county of Ritchie, with a perfect knowledge on the part of said Core of your orator's prior purchase and possession. Your orators show that the said Core professes to have obtained a deed of conveyance of said land from William Harris, and threatens to turn your orators out of the possession of said land. Your orators deny that said deed has been made; they show that a deed from said William Harris, he not having obtained a deed from Hardman nor Rafferty, would not pass the legal title to said Core, and to give it the largest construction, would only amount to an obligation for the legal title, and as evidence of his equitable title to said land, and being but an equitable title only, and coming in conflict with your orators' prior equitable title, must yield to your orators' prior equity. Your orators show and charge specifically, that at the time said Core made the purchase of said Harris, the said Core had full and complete notice of your orators' prior purchase of said land, and at the time of said purchase the matter of said purchase by your orators was fully and freely talked of between the said contracting parties." They pray a decree directing Raferty to convey to Hardman, and Hardman to Harris, and Harris to complainants—each with covenants of general warranty; that the deed made by Harris to Core be set aside and annulled, and "in like manner any contract which may appear to have been made be set aside," and for general relief. The title-bond of June 21, 1849, is signed by

William Harris, R. P. Camden and Weden Hoffman, and is in all respects as alleged in the bill. The title-bond states, that Harris " has this day (date of bond) placed the said Hoffman and Camden in the quiet and peaceble possession of said two hundred and seventy-two acres of land."

The only depositions taken in the cause, were those of Riddle and Hall, taken by the complainants, to both of which there were exceptions filed by Core. On the 12th day of November, 1869, the court sustained the exceptions taken to Riddle's deposition of September 15, 1851, and overruled the exception to Hall's deposition. Riddle's deposition, by leave of court, was re-taken November 1, 1870.

On the 22d day of November, 1870, the court entered a decree for the specific execution of the plaintiffs' contract of June 21, 1849, and setting aside and annulling the deed from Harris to Core ; directing Harris to convey by proper deeds to Camden one equal undivided half part of the said two hundred and seventy-two acres of said land, and the other undivided half part of said land to the heirs of said Weden Hoffman, deceased, and unless said Harris executed said deed within thirty days from the rising of the court, that then W. G. Bennett, appointed special commissioner for the purpose, do execute such a conveyance, &c., and further authorized the plaintiffs to withdraw for record the deed made and filed in the cause by Raferty to Hardman, and also the deed made by Hardman to Harris, &c. And it being suggested that Core had taken possession of part of said land, the court further decreed that a writ of possession do issue in behalf of the plaintiffs, &c. And leave was reserved to Core to apply to the court for relief against said Harris, by reason of the obligation of the contract between them.

From this decree, Core has appealed.

R. S. Blair, for appellant, cited the following authorities :

1879
Special Term.

Camden *et al.*
v.
Harris *et al.*
12 Gratt. 603, 604; 2 Min. Inst. 887; *Id.* 885, 886; Code Va. 1819, ch. 13, p. 365; *Doswell* v. *Buchanan*, 3 Leigh —; 21 Gratt. 247, 248; 5 W. Va. 135.

*G. D. Camden*, for appellees, cited the following authorities:

Code ch. 123; *Id.* ch. 124.

MOORE, JUDGE, delivered the opinion of the Court:

The appellant, Core, in his fourth assignment of error, held that the court had no jurisdiction of this cause in chancery. A court of equity has jurisdiction to enforce the specific execution of a contract. The object of this bill was for that purpose; to compel Harris to comply with his contract with the plaintiffs, who had performed their part as agreed, and to obtain a proper conveyance to them of the land they had contracted for. Equity therefore had jurisdiction of the subject-matter. The circuit court of Gilmer county had jurisdiction, because the defendant, Harris, resided in said county, and also because part of the land lay in that county.

It is claimed that the court erred in its decree of November 22, 1870, by enforcing, in favor of the plaintiffs, specific execution of the written contract made between Harris and plaintiffs, dated June 21, 1849, and also in setting aside and annulling the deed of April 22, 1850, made by said Harris to defendant, Core, pursuant to the written agreement between said Harris and Core, dated November 15, 1849.

From the view I take of this cause as presented by the record before us, the question now to be considered is to be solved by a comparison of equities. It appears that Hiram Riddle, the former owner of the land in controversy, conveyed it by deed to Patrick Raferty; Raferty in his answer admits that by an agreement with George W. Hardman he was to convey said land to said Hardman in consideration of three hundred and thirty-four acres of land conveyed to him by Hardman by deed,

November 22, 1848, and had also paid Hardman $50.00 in addition, but had not conveyed the land to Hardman in consequence of a pending suit litigating by Middleton the land Hardman had conveyed to him, but was willing to convey it by deed to Hardman if he "could do so without sustaining any injury thereby." This answer was made May 13, 1853. But it appears from the final decree of November 22, 1870, that Raferty did make the deed to Hardman, and the plaintiffs were authorized to withdraw it for recordation, but this defective record does not show the deed, nor how and when it was made, nor the character of it. Harris entered into his contract with the plaintiffs June 21, 1849, to convey the land to them "*against the 20th of September next,*" (1849) and give them immediate possession. Hardman, without possessing the legal title, made a deed to Harris, October 20, 1849, purporting to convey said land, which was recorded April 22, 1850, being seven days after Harris and Hardman had been summoned to answer the bill. Harris sold the land also to Core by their contract of November 15, 1849, and bound himself to make Core a deed within two months, and Core to have possession November 15, 1849. On the 22d day of April, 1850, nine days after this suit was brought against him, Harris made his deed for the land to Core, which was recorded the same day.

Core by leave of court filed his answer to said bill, April 12, 1851, to which complainants replied generally. The answer states substantially that Core purchased the land from Harris, November 15, 1849, and paid him for it, $155.00 in hand, as appears by an article of agreement entered into between respondent and Harris, dated November 15, 1849, and exhibited with the answer, on the back of which said Harris acknowledged the receipt of the purchase-money aforesaid, and is also prayed to be taken as a part of the answer; that almost the entire tract of said land is lying in the county of Ritchie; that at the time he purchased said land he had no notice or knowl-

edge of complainant's prior .purchase, but avers on the contrary that he was an innocent purchaser, that complainants never recorded their title-bond in Ritchie county, or gave respondent any notice whatever of having purchased the same land until respondent had purchased the same and paid said Harris the full consideration he was to give for said land ; "that he never dreamed of complainants having purchased the land until he had purchased and paid said Harris for the same." But "respondent acknowledges that he did receive notice of complainants' purchase a short time before said Harris made the conveyance aforesaid, but a long time after he had bought and paid for the same;" that at the time Harris made the conveyance to respondent he positively averred that he never had sold or agreed to convey the land to the complainants. That the deed of conveyance to respondent was made by Harris, April 22, 1850, with general warranty ; and was recorded in Ritchie county, a copy of which he exhibits with his answer; that Harris was notoriously insolvent at the time respondent received notice of complainants' claim, and had respondent cancelled the contract made with Harris, or brought suit against him, he could not have recovered his money back off of him ; and inasmuch as complainants failed to have their title-bond recorded in the county of Ritchie, in which county the complainants admit the land is, and also failed to give respondent notice of their prior purchase of said land before respondent had bought and paid for the same, and upon having received a conveyance from said Harris, that in equity he is entitled to said land.

At the circuit court held for the said county of Gilmer on the said 13th day of September, 1851, the following entry was made in this case: "The defendant, by counsel, files a copy of a deed from George W. Hardman to William Harris as an exhibit in this cause." The deed bears date October 20, 1849, and purports to convey the land in the bill mentioned to William Harris with

1879
August Term.

Camden *et al.*
v.
Harris *et al.*

general warranty, from Hardman and his wife, and was recorded in Ritchie county, April 22, 1850, the same day that Harris's deed to Core was recorded in the same county.

On the 17th day of September, 1851, Raferty by leave of the court filed his answer to said bill, by which he admits that he purchased said land from Riddle who made him a deed for it; that the larger portion of said land is in Ritchie county, but that his deed is recorded in Gilmer county; that in the year 1846, Hardman executed a title-bond to respondent conditioned to convey to him a tract of land of three hundred and thirty-four acres out of a fourteen hundred acre survey, which he alleged he purchased from H. O. Middleton. In consideration of said land and $50.00, respondent was to convey to Hardman the tract of land first above mentioned; that Hardman has executed a deed to respondent for the Middleton land; but respondent is informed that a suit has been instituted against said Hardman and others, and against the whole fourteen hundred acre tract, to subject to sale for the purchase-money to him, said Middleton, from said Hardman, and there is some defect in said Middleton's title; that in either of which cases, the consideration for the land in complainants' bill mentioned from Hardman to respondent would fail, as Hardman was to make a clear title to respondent. Respondent avers that he is willing and ready to make a title to said land, with warranty—the same as warranted to him from Hiram Riddle—whenever the cloud is cleared from the Middleton and Hardman title.

On the 13th day of May, 1853, it appearing to the court that Weden Hoffman had departed life intestate, leaving Sarah E. Hoffman, Thomas W. Hoffman, Mary O. Hoffman and Emma M. Hoffman, his children and heirs at law, of which the last three are infants, it was ordered that the cause be and stand revived in their name, and the suit as to the infants be prosecuted in the name of their next friend Richard P. Camden; and on motion of the defendant

Patrick Raferty, he by leave of the court filed his answer to complainants' bill, and complainants reply thereto, and by consent of parties, the cause was referred to a commissioner to ascertain and report the amount due upon complainants' judgment against John Harris, on the 21st day of June, 1849. The answer of Raferty admits that the allegations of the bill as to the conveyances from Riddle to him, and from respondent to Hardman, are true; that he did enter into an agreement with Hardman to convey him the tract of land in the bill mentioned, in consideration of three hundred and thirty-four acres of land conveyed by Hardman to respondent; and that he had paid to Hardman $50.00 in hand in addition to the tract of land mentioned in the bill; that the deed to him from Hardman is a general warranty; that a suit is pending in the said circuit court of Gilmer county, in which Middleton is complainant and respondent and others are defendants, for the land conveyed by said deed; that the deed from Hardman was executed November 22, 1848, and was a lien upon the land so conveyed at the time; that respondent is prepared to execute his deed to said Hardman provided he could do so without sustaining any injury thereby, and is prepared to execute his deed to Hardman, reserving a lien upon the land so conveyed in case the claim of Middleton to the land conveyed to respondent, should be sustained. He prays to be protected in his interest in this matter. Such are the substantial parts of the answers. Why Raferty was permitted to file the second answer does not appear from the record.

The bill avers that Hardman after his purchase from Raferty "sold and agreed to convey said land, by covenants of general warranty," to Harris, "and gave him a title-bond binding himself to convey when the purchase-money should be paid, and all the purchase-money being now paid, the said Harris is now entitled to a conveyance;" that the actual date was not known to plaintiffs, but avers substantially that it was prior to the contract between them and Harris. Hardman, Harris and Core

were regularly summoned to answer the bill, Core did not deny the averment, and as Hardman and Harris failed to answer the bill, that averment must be taken as true. Hence, from this statement of the facts it is clear, that at the time of the institution of the suit by the plaintiffs, the legal title to the land was still in Raferty, and so remained until about the time of the rendering of the final decree; and that Harris had obtained from Hardman only an equitable title by his title-bond, and that as Hardman had only an equitable title at the time he made his deed to Harris, he did not thereby convey to Harris the legal title, and consequently Harris did not convey to Core the legal title by his deed of April 22, 1850. But even had legal title been in Harris at the making of the deed April 22, 1850, I apprehend it could not have affected the equities of the case, because it was made *pendente lite*, and therefore subject to all equities existing at the beginning of the suit. Neither of the parties, therefore, having obtained the legal title, but the titles of the plaintiffs and defendants being purely equitable, and emanating from the same source, and each party being equally innocent and equally diligent, it seems to me that the elder equity should prevail, the maxim being *qui prior est in tempore, potior est in jure*; "for precedency in time will, under many circumstances, give an advantage, or priority in right." 1 Story's Eq. Jurs. §64 d. It is true that where the equities are not equal, the junior equity may under certain circumstances prevail against an elder equity, and in that case the holder of the junior equity may have the preferable right to call for the legal estate as was the case in *Williamson* v. *Gordon's ex'r*, 5 Munf. 257; *Coleman* v. *Cooke*, 6 Rand. 618; *Mut. Ass. Soc.* v. *Stone et al.*, 3 Leigh 218.

In the present case, as neither party has the legal title, the oldest equity must prevail, unless Core has established that he has a greater equity than Camden and Hoffman, the first purchasers. It would seem that he had not, because Camden and Hoffman had not only

1879
August Term.

Camden *et al.*
v.
Harris *et al.*

Syllabus.

1879
August Term.

Camden et al.
v.
Harris et al.

purchased the land, but had also paid the entire purchase consideration, with the exception of $1.53, a balance not at the time of the purchase known to either the plaintiffs or Harris, and was "to be ascertained" as agreed by them, by reference to the chancery suit, the compromise of which suit was a part of the consideration of the purchase; and the plaintiffs were also put in possession of the land, by Harris, at the time of the contract, which was nearly five months before Core's purchase was made. " Where the adverse claimant is in the *adverse possession and occupancy* of the land, when the subsequent purchaser buys," it is such constructive notice that *sound public policy* requires the presumption that the subsequent purchaser was aware of the prior purchase, or at least, that he should be treated as if he were aware of the existence of the prior conveyance or charge. 2 Minor's Inst. 1043-4, and cases there cited. Such possession and occupancy by the plaintiffs was sufficient to have put Core upon his guard, and should have made him cautious in making his purchase, until he could have learned by what right the plaintiffs held the land. If therefore Core had not actual notice of the prior purchase, it was the result of his own negligence in omitting under the circumstances to make proper enquiry. Taking this view of the case, it is hardly necessary to consider the testimony of Riddle and Hall, as to actual notice. Riddle, however, testifies that he had a conversation with Core, " which was somewhere about the 8th day of November, 1849," that Core told him "he was about to buy the land or had bought it," witness did not remember which, but he says, "my impression is that he was about to buy it." Witness then told him, that he had heard Harris tell Hardman "that he wanted to get a deed from him in order that he might make a deed to Camden." This was about a week before Core's purchase, if the witness is correct as to time. Hall, another witness says he had a conversation with Core in regard to said land "on or about

the month of November, 1849," and that Core told him "he had purchased said land on the day before this conversation took place," and that witness then told Core that Hoffman and Camden had purchased the same land some time before, and that Harris had told witness that he had sold the same to them. Hence from this testimony it is not clear that Core had not actual notice before his purchase. (An objection was made to the deposition of Hall, on the ground of the insufficiency of the notice for want of time, which objection was overruled. Whilst it is not advisable to give such short notices, yet as the defendant Core lived only six and one-half miles from the place, I am not inclined to hold the notice insufficient.)

Again, Core admits, by his answer, that he had notice of the prior purchase before he obtained his deed from Harris. Even had that deed conveyed the legal title, it could not have improved his condition, if the doctrine laid down in *Beverley* v. *Brooks et al.*, 2 Leigh 446, be true, that a subsequent purchaser must be a *complete purchaser*, having both paid the purchase-money, and taken a conveyance before notice.

Under these circumstances, the equity of the first purchasers, Hoffman and Camden, being fully equal to that of the second purchaser, Core, it must prevail.

It is assigned that it was error " in the court to decree a writ of *habere facias possessionem* to the complainants, the land being in the county of Ritchie, and not in the county of Gilmer, where the decree was rendered." It appears from Raferty's answer that the land lies in both Ritchie and Gilmer counties. But the statute authorizes process, from any court, whether original, *mesne* or final to be directed to the sheriff of any county. Code p 595, ch. 124, §2. The exceptions made by the statute do not embrace the writ of possession. Therefore I think it is clear that the court did not err in directing the writ of possession to Ritchie county, especially as most of the land lay in that county.

1879
Special Term.

Camden *et al.*
v.
Harris *et al.*

The decree of November 22, 1870, should be affirmed, with costs, and $30.00 damages.

THE OTHER JUDGES CONCURRED.

DECREE AFFIRMED.