# CHARLESTON.

## RICHARDSON V. McCONAUGHEY.

Submitted June 16, 1902.    Decided April 1, 1904.

1. SYLLABUS APPROVED.
   Points 1, 3 and 8 of syllabus, *Troll* v. *Carter,* 15 W. Va. 567, re-affirmed. (p. 554.)

Appeal from Circuit Court, Marshall County.

Bill by L. M. Richardson and her husband against Ann McConaughey and others. Decree for defendants, and plaintiffs appeal.

*Affirmed.*

J. E. HOOTEN, and MEIGHEN & OLDHAM, for appellants.

J. HOWARD HOLT, for appellees.

McWHORTER, JUDGE:

David McConaughey executed his will by which he devised to his wife, Ann McConaughey, all of his real estate and personal property, giving her full control thereof and to receive all the proceeds or assets arising from the same and she to pay all just debts which he might owe at his death, and keep all the property free from encumbrances so long as she remained his widow, or until his youngest son, David McConaughey, Jr., should arrive at the age of thirty years, when if the said David, Jr. should be living he gave him one hundred acres of the farm on which testator lived, including the dwelling house and other improvements pertaining thereto, and, provided, that if his wife, Ann, so desired, she should remain with him, he to keep and provide for her thereafter during her natural life; and gave to his son Samuel one hundred acres of land and $500, and to his sons Robert A. and James B. each one hundred acres of land, and bequeathed to ecah of his daughters, Martha L. Richardson, Sarah Ann Hogue, M. Virginia McConaughey, and Isabella F. McConaughey each $1,000, and stated that the said Mrs. Richardson had received the $1,000 intended for her. Which will was dated the 10th day of April, 1874, and admitted to probate on

the 3d day of September of the same year, in the clerk's office of the county court of Marshall county. On the 16th day of March, 1899, Martha L. Richardson and her husband E. P. Richardson sued out of the clerk's office of the circuit court of Marshall county their subpoena in chancery against Ann McConaughey and the heirs at-law of David McConaughey, deceased, and filed their bill of complaint, alleging that her father, David McConaughey, had died seized of some $40,000.00 worth of real estate and considerable personal property amounting, according to the appraisement made by Ann McConaughey, the administratrix, on or about the 4th day of September, 1874, to the sum of $8,969.69; that there were no debts against the estate other than a debt of $581.00 due to James A. and Elizabeth Chambers, which debt was paid by the administratrix on or about the 3d day of August, 1875; that Ann remained the widow of the testator and David, Jr., arrived at the age of thirty years in the year 1889; that the testator by his said will disposed of only a portion of his real and personal property and that there remained of said estate to be divided among the children of the decedent and the heirs of such children as had died all of his real estate situated in the town of Cameron and about one hundred acres of farm land after the estate of Ann McConaughey therein should cease; that early in the year 1889, after said David, Jr., arrived at the age of thirty years, and the widow and the then surviving children of said decedent, viz: David W., Samuel D., Robert A., James B., Isabella F., formerly Isabella F. McConaughey, and plaintiff Martha L. Richardson, agreed upon a friendly and amicable partition of all the said real estate not disposed of by the will; that E. P. Richardson, plaintiff and husband of Martha L., consented to and joined in said agreement with his wife, and Anna Pearl Hogue, who was then an infant, was represented in said agreement by her guardian, David W. McConaughey. The terms of the agreement were talked over previous to the 18th of February, 1889, and on that day the agreement in regard to the partition of the real estate was concluded; that by said agreement one hundred acres of the home farm were conveyed to said David W. as and for the one hundred acres devised to him by said will, and one hundred acres of said farm in Liberty District were conveyed to Robert A. as and for the one hundred acres devised to him, and seventy-

nine acres and one hundred poles of said farm in Liberty District were conveyed to said James D. McConaughey as and for one hundred acres devised to him, and one hundred and seven acres of the home farm in Cameron District were conveyed to said Samuel D. McConaughey as and for the said one hundred acres devised to him by the will, said conveyances were by deeds of the date of Februray 18, 1889, duly executed by Ann McConaughey and all the adult heirs of David McConaughey, deceased, including the plaintiffs, and deliverd to the respective grantees and all duly recorded; that it was agreed that the residue of said real estate owned by David McConaughey, deceased, at the time of his death, should be partitioned among the heirs-at-law and to effect such partition it was agreed to make the said Ann McConaughey the channel or means through whom conveyances should be made to the different children, and two deeds conveying all the residue of said real estate owned by said decedent to the said Ann McConaughey were made and duly executed by all his adult children, including plaintiffs, and delivered to said Ann McConaughey. One of said deeds dated January 24, 1889, conveying fifty-three acres more or less of the home farm, but was not signed or acknowledged by plaintiff until the 18th of February, 1889. The other was dated February 18th, 1889, and conveyed to Ann McConaughey thirty-eight acres and one hundred poles of the home farm and all the lots and parcels of said real estate within the corporate limits of the town of Cameron, which deeds were exhibited with the bill. That recitals in said two deeds were that conveyances were made in consideration of "natural love and effection for second party, and for good and valid considerations moving them thereto;" but alleging the fact to be that both of said conveyances were made to said Ann in trust that she would re-convey all said real estate to the said children and adult heirs of the said decedent, according to the terms of said agreement to partition the same, and as stated how other portions were to be re-conveyed to the different heirs: "And the two story brick building known as the 'Reinheimer Business Building' with its lots of about two hundred and fifty feet front, as it was then fenced in, was to be re-conveyed to the said plaintiff Martha L. Richardson and the defendant Isabella F. Dean, then Isabella F. McConaughey, to have and to hold the same for and during their lives, with remainder to the survivor of them during her

life, and then to the said David W. McConaughey, Samuel D. McConaughey, Robert A. McConaughey and James D. McConaughey, or to their heirs, in fee forever; but the said Ann McConaughey was to retain and reserve to herself a life estate in said property and the balance of the farm land was to be conveyed to Samuel D. McConaughey and David W. McConaughey." That on the said 18th day of February a deed was written conveying the said two story brick building and said lot of ground to said plaintiff, Martha L. and Isabella F. in accordance with said agreement, but plaintiffs were unable to state whether said deed was signed and acknowledged by Ann McConaughey or not, but that she then and there agreed to sign and acknowledge said deed and all the said adult children and heirs also agreed that said deed should be signed, acknowledged and delivered by said Ann to the said plaintiff, Martha L. and defendant Isabella F., and that in consideration of said agreement to re-convey said property to said Martha and Isabella as stated that the plaintiffs signed and acknowledged the said two deeds to Ann. That said Ann McConaughey on the 18th day of February, 1889, promised them that the said deed to Martha and Isabella would be taken by her son together with the other deeds that were made or agreed to be made on that date to the office of the recorder of Marshall county and placed upon record; that they believed, or supposed for a long time, that the deed to Martha and Isabella had been executed and placed on record, and that they knew nothing to the contrary and supposed same had been done until some time about the month of ————— 1898. That some time in the year 1893 said Ann McConaughey leased a portion of said real estate which was to be so re-conveyed, to E. P. Richardson, said E. P. Richardson in consideration of said agreement made on the 18th day of February, 1889, by which the plaintiff, Martha, his wife, was to become the owner of a life estate of the undivided one-half interest in said real estate, made valuable improvements in said real estate, consisting of a two story frame business building and other improvements costing in all the sum of $3,200; that about the month of May, 1898, said Ann made an offer to plaintiff Martha, that she would give her and said Isabella immediate possession of said real estate if they would pay her the sum of $200 a year during the rest of her life. When

plaintiff informed Isabella of her offer she refused to accept it; that plaintiff Martha, then accepted the offer and plaintiffs immediately began to put the two story brick business building in a complete state of repair and that they laid out and expended in making such repairs about $150, which they were induced to do in consideration of said agreement made on the 18th day of February, 1889, by which said plaintiff Martha was to become the owner of a life estate in the undivided half interest in said real estate. That while they were so engaged in making said repairs some dispute arose between them and said Ann as to the interest said Martha was to have in said real estate, when on examining the record of the recorder of deeds, plaintiffs for the first time found that no such deed had ever been left for record. They then went to Ann and she said to them, "The deed had been lost and I will never make another in its place," and refused to carry out her agreement to put Martha in possession, and refused to make her a deed for said real estate as provided in the agreement of February 18, 1889. Plaintiffs further allege that Ann, David W., and James B. McConaughey and Isabella F. Dean had combined, confederated, and conspired together to cheat and defraud plaintiff, Martha, out of her interest in the real estate of her father, which was not disposed of by his will, and that Samuel D. and Robert A. McConaughey had sided with and abetted said combination and conspiracy to cheat and defraud them, and alleged that to carry said conspiracy into effect the said Ann McConaughey by deed dated October 8, 1898, conveyed a portion of said real estate that was to be conveyed to the said Martha and Isabella to said James B. McConaughey for an alleged consideration of $500, and by deed of same date said Ann conveyed another portion of said real estate to David McConaughey Dean, an infant son of said Isabella, age about eight years, for an alleged consideration of $500, and by deed dated the 24th of December, 1898, said Ann conveyed another portion of said real estate to said David W. McConaughey and Isabella F. Dean for an alleged consideration of $3,000, and by the same deed she conveyed another portion of said real estate, being the residue thereof, to said David W. for an alleged consideration of $500, copies of which deeds were exhibited with the bill, alleging that no consideration at all was paid for any of said last mentioned

conveyances and that said deeds were made to cheat and defraud the plaintiff Martha, out of her interest in the said real estate, and at the time said deeds were made by said adult grantees therein, after they knew that said real estate had been assigned to the said Martha, to have and to hold an undivided one-half interest therein for and during her life, after the death of said Ann McConaughey and if said Martha survived the said Isabella then she was to have and to hold the whole of said real estate during her life; that said Ann had wholly violated the trust upon which the real estate so described was so conveyed to her so far as the interest of the plaintiff Martha, in said real estate was concerned; but that so far as the interests of the other defendants were concerned she executed the trust. Plaintiffs further allege that they did not know what interest the defendant Anna Pearl Hogue was to have in the real estate of the decedent, David McConaughey, but that after the said Anna Pearl Hogue became twenty-one years of age she executed a deed to said Ann McConaughey for the tract of land conveyed by the adult heirs by deed of the 18th of February, 1889, containing thirty-eight acres and one hundred poles and also the real estate within the corporate limits of the town of Cameron which was described and conveyed by the said adult heirs, dated the 21st day of January, 1889, which deed made by said Ann Pearl was dated May 28, 1897, and duly recorded; that the said several parcels of real estate described in the four deeds made by said Ann McConaughey to the several heirs of the decedent dated first two October 8, 1898, and the last two December 24, 1898, together comprising the real estate that was assigned to said plaintiff Martha, and the defendant Isabella as their share of the real estate of said David McConaughey, deceased, by the agreement made on the 18th day of February, 1889; and prayed that the said Ann McConaughey be decreed to hold in trust the land described in the deed of the 18th of February, 1889, made by the adult heirs of David McConaughey to Ann, described as containing thirty-eight acres and one hundred poles and also lots and parcels of land within the corporate limits of the town of Cameron; and that the said deeds made by said Ann McConaughey to James B. McConaughey *et al.,* dated the first two October 8, 1898, and the other two December 24, 1898, be decreed to be in violation of such trust and a fraud upon the rights of plaintiffs and that the

same be set aside and annulled so far as they affect the rights of plaintiffs in the property described therein; and that said Ann McConaughey be compelled to specifically perform the trust upon which she held the said thirty-eight acres and one hundred poles and the lots and parcels within the corporate limits of Cameron and that she be required by good and sufficient deed to convey to plaintiff Martha L. Richardson one-half interest in the real estate mentioned and described in said four deeds, to have and to hold for and during her natural life and should said Martha survive the said Isabella, then Martha to have and to hold the whole of said real estate, her life estate therein being reserved by the said Ann McConaughey and on her refusing to make such conveyance that the court appoint a special commissioner to make the same, and for general relief.

The defendants, Ann, David W., Samuel D., Robert E., and James P. McConaughey and Anna Pearl Hogue and Isabella F. Dean, tendered their demurrer to said bill because, among other things the bill does not allege that the agreement "upon a free and amicable partition" was in writing and signed by the parties made defendants and in consequence the terms of that agreement cannot be enforced under the Statute of Frauds; that the agreement could not be enforced against Anna Pearl Hogue, at any event even if it had been in writing and signed by her guardian; that the exhibits are inconsistent with the allegations of the bill and taken together show that there is no equity in the bill; that there is no agreement or memorandum in writing of that agreement signed by Ann McConaughey agreeing to reconvey the property as alleged; that no time is alleged in which said reconveyance was to be made and that if Ann McConaughey was to retain a life estate in said property plaintiff could have no interest until after her death; that there is no averment in the bill of any agreement in writing that Ann McConaughey would execute any such conveyance or that she signed, acknowledged and delivered the deed alleged to have been written on February 18, 1889, and because the *laches* of plaintiff in setting up their pretended claims after the lapse of more than ten years is a complete bar to the same which bar defendants' plead by way of analogy to the bar of the Statute of Limitations and also plead the Statute of Limitations of ten years to any such contract or agreement as that pretended to

have been made; that the bill is multifarious in having set up said contract as the one to be enforced and then attempting to set up another and different contract for the leasing of said real estate by Ann to Richardson without exhibiting said contract or giving its terms in full, which terms would show the statements with respect to the first contract to be utterly unfounded, in fact; that the bill is further multifarious in setting up a contract alleging to have been entered into in the month of May, 1898, between Ann McConaughey of the one part and Martha L. Richardson of the other, said allegations being wholly at variance with the allegations immediately preceding, to the effect that Ann had already leased the property to E. P. Richardson; that the said defendants, Anna, David W., James P. McConaughey and Isabella F. Dean had combined, conferred and conspired together to cheat and defraud plaintiff, Martha L. Richardson out of the real estate of her father and that Samuel F. and Robert E. McConaughey had aided and abetted in said combination and conspiracy and had stated no grounds in the bill upon which to rest such allegation; that the exhibits filed with the bill showed that said Ann McConaughey was the owner in fee-simple of said real estate alleged to have been conveyed by the said adult heirs and could do what she pleased with the same without giving plaintiffs any ground for complaint. On the 5th day of June, 1899, the cause was submitted on the demurrer; the demurrer was sustained and the plaintiffs not desiring to amend the bill, the same was dismissed.

It is insisted on the part of the appellees that the case comes within the doctrine laid down in *Troll* v. *Carter,* 15 W. Va. 567, while the appellants claim that it is clearly covered by the exceptions in said case set out, as stated in syllabus 2, to which the rule is not properly applicable. JUDGE GREEN in delivering the opinion of the Court in that case, says: "It is a general rule of evidence that parol testimony cannot be admitted to vary or add to a written contract, and especially a contract or deed conveying lands," and cites quite a number of authorities, which see on page 576. And point 3, syllabus in that case, it is held: "If a party obtains a deed without any consideration upon a parol agreement that he will hold the land in trust for the grantor, such trust will not be enforced, as it would violate the Statute of Frauds and this general rule to permit parol evidence to es-

tablish such a trust" the rule constituting the first point in the syllabus of the case, "Parol evidence cannot be admitted to vary or add to a deed as a general rule." Syllabus, pt. 3, applies to deeds made without any consideration upon a parol agreement; with much more force it would apply where there is valuable consideration.

The conveyances made in case at bar, upon which the trust is sought to be established, recite on their face, "That the parties of the first part, in consideration of their natural love and affection for second party and for other good and valuable considerations moving them thereto, do grant," etc. The grantee being the mother of the grantors.

These deeds convey the property with general warranty, and it is not alleged in the bill that the conveyances were without consideration. In *Troll* v. *Carter,* cited, JUDGE GREEN cites *Porter* v. *Hayfield,* 9 Harris (21 Pa. St.) 214. "There are cases wherein trusts may be proved by oral testimony, but not in violation of the rule that protects written agreements against such testimony. As a deed of conveyance is intended to define the relations between the parties to it, it is not contradicted when it is shown that the vendee purchased in trust for a third person; for such evidence only establishes a new and consistent relation. But evidence, that at the time of the conveyance the vendee agreed to hold the title in trust for the vendor, is a flat contradiction of the written instrument executed by the parties as the bond and evidence of their relation, and would make it void from its very inception. Oral testimony can have no such power. As between vendor and vendee such testimony cannot be heard to change a title absolute on its face into a trust. It was, however, held in *Lingenfelter* v. *Ritchey,* 8 P. F. Smith (58 Pa. St.) 448, that parol evidence might be received to establish a trust in favor of the grantor. But the decided weight of authority as well as reason sustains the position, that 'parol evidence that at the time of the conveyance the vendee agreed to hold the title in trust for the vendor,' is not admissible. See *Leeman* v. *Whitley,* 4 Russ. 423 (5 Eng. Cond. Ch. Cases 746) ; *Hagan* v. *Jaques et al.,* 4 C. E. Green 123 ; *Squire* v. *Horder,* 1 Paige 494; *Farmington* v. *Barr et al.,* 36 N H. 86. But the correctness of the other position taken by the court in *Porter* v. *Hayfield,* 9 Harris (21 Pa. St.) 264; that 'as a deed of conveyance is intended to define

the relations between the parties to it, it is not contradicted when it is shown that the vendee purchased in trust for a third person, for such evidence established a new and consistent relation,' is by no means so obvious." It will be seen that while JUDGE GREEN agrees with the case of *Porter* v. *Hayfield* as far as it holds that parol evidence is not admissible to establish a trust in favor of the grantor, he questions the proposition that the deed "is not contradicted when it is shown that the vendor purchased in trust for a third party." This last proposition, as held in *Porter* v. *Hayfield,* has, however, been sustained by this Court in *Currence* v. *Ward,* 43 W. Va. 367.

It is not alleged in the bill that the parol agreement was to hold in trust, for the grantor the property conveyed; but it is claimed that it was to be held in trust, a life estate in part of it to begin at the death of the grantee, to the plaintiff, Martha L. Richardson, and Isabella F. Dean, her sister, and to the survivor of them, the remainder to D. W. McConaughey and others or to their heirs in fee. The bill does not allege that this agreement was in writing, but that it was agreed to be in writing and plaintiffs supposed that a deed to that effect was executed and placed upon record as defendant, Ann McConaughey, had agreed to do; that the same was to be placed on record by her at the same time that her deeds, by which she holds the property, were recorded; that the plaintniff did not discover that said deed had never been recorded until she examined the records in 1898. The conveyances to Ann McConaughey dated Feb. 18, 1889, which is the date of her verbal agreement as set up in the bill to execute a writing or deed reserving to plaintiff her rights in the premises, while this suit was commenced on the 16th day of March, 1899, more than ten years after said parol agreement, relied upon by plaintiffs, was made. Appellees insist that the *laches* of plaintiffs in setting up their pretended claim after the lapse of more than ten years is a complete bar and defendants plead it by way of demurrer as analogous to the bar of the Statute of Limitations. In *Troll* v. *Carter,* cited, syllabus, point 8, it is held, that the courts will not enforce a parol trust where a great lapse of time has intervened since the absolute deed was executed and where the grantee has during such time acted as the absolute owner of the property, unless the *laches* of those claiming to be *cestuis que trust* is satisfactorily explained. In

case at bar there is no attempt at explanation, unless it can be said that plaintiffs thought the defendant, Ann McConaughey, had ten years prior to the bringing of this suit in pursuance of her promise, placed upon record a deed preserving the rights of the plaintiff.

It was certainly the duty of plaintiffs if such promise was made on the part of Ann McConaughey to place such deed upon record to know that it was done as promised. It is not alleged that such deed was executed or delivered, and nothing claimed but a mere verbal promise on the part of Ann, that she would have such a deed recorded in favor of plaintiff.

Plaintiff was guilty of gross *laches* and makes no explanation to entitle her to relief. There is no error in the decree and the same is affirmed.

*Affirmed.*

POFFENBARGER, PRESIDENT, (*concurring*):

The bill alleges a conveyance by the plaintiffs and other heirs to Ann McConaughey of certain real estate upon the understanding and agreement that she should immediately execute to the grantors severally deeds, re-conveying to them certain portions of the land so conveyed to her, reserving to herself life estates in the several tracts so to be reconveyed, and that the particular tract to be conveyed to the plaintiffs was described and identified and a deed for the conveyance thereof to them prepared for execution by the said Ann McConaughey. The conveyance to her was a step in the performance of an antecedent agreement for the partition of real estate among the grantors, subject to a life estate therein to the grantee. Ann McConaughey, under this agreement, was to act as a sort of conduit or agency for the exchange of titles in affecting partition, and the titles were to pass in and out of her instantaneously. It was upon this agreement that the conveyances were made to her. The bill does not allege that she took the land conveyed to her upon a trust for the grantors. It does not say she agreed to hold the lands for them. It does not attempt to set up an express parol trust in contradiction of the deed. It attempts to allege that she committed a fraud upon the grantors in refusing to perform a contract upon the faith of which the conveyances were made to her. The facts alleged in the bill and proposed to be established by parol evidence, if they were sufficiently alleged, constitute what, in law, is termed a con-

structive trust, a trust springing out of a fraud, and to such a trust the statute of frauds does not apply. The case is, therefore, not within the third point of the syllabus in *Troll* v. *Carter,* 15 W. Va. 567, but falls within the exception to the statute of frauds mentioned in points of the syllabus of that case, which says, among other things: "If a grantee in a deed has procured it by fraud, he will be held by a court of equity to be a trustee of the real owner."

This is a principle almost as old as the Statute of Frauds itself. At an early day the courts established the doctrine that a statute which had been enacted for the purpose of preventing and suppressing frauds and perjuries could not be allowed to become itself an instrumentality or engine for the perpetration of fraud. "A second well-settled and even common form of trust *ex maleficio* occurs whenever a person acquires the legal title to land or other property by means of an intentionally false and fraudulent verbal promise to hold the same for a certain specified purpose,—as, for example, a promise to convey the land to a designated individual, or to reconvey it to the grantor, and the like, —and having thus fraudulently obtained the title, he retains, uses, and claims the property as absolutely his own, so that the whole transaction by means of which the ownership is obtained is in fact a scheme of actual deceit. Equity regards such a person as holding the property charged with a constructive trust, and will compel him to fulfill the trust by conveying according to his engagement." 2 Pom. Eq. Jur. sec. 1055.

"The fraud against which equity will relieve, notwithstanding the statute, is not the mere moral wrong of repudiating a contract actually entered into, which, by reason of the statute, a party is not bound to perform for want of its being in writing. This was early laid down by Lord Macclesfield, Chancellor, in a case arising upon a promise of a defendant, about to marry, that his wife should enjoy all her own estate, to her separate use after the marriage, which promise, as one made 'upon consideration of marriage,' could not regularly be enforced. His lordship declared that 'in cases of fraud, equity should relieve, even against the words of the statute; as if one agreement in writing should be proposed and drawn, and another fraudulently and secretly orought in and executed in lieu of the former; in this or such like cases of fraud, equity would relieve; but where there is no

'fraud, only relying upon the honor, word, or promise of the de-
·fendant, the statute making those promises void, equity will not
·interfere.' "   Browne on Statute of Frauds, sec. 439.

"Parol evidence is admissible to establish a trust, even against
a deed absolute on its face, if it would be a fraud to set up the
form of the deed as conclusive.   Lord Hardwicke stated 'that the
court adhered to this principle, that the statute of frauds should
never be understood to protect fraud, and therefore wherever a
case is infected with fraud, the court will not suffer the statute
to protect it.'   Lord Thurlow added, that 'the moment you im-
·peach a deed for fraud you must either deny the effect of fraud
upon the deed, or you must admit parol evidence to prove it.'   If
·this was not so, the law would be reduced to this absurdity—if a
·fraud could once succeed in procuring the transaction to be re-
·duced to writing and signed by the parties, it would be protected
·by the law itself, and there would be no possible means of reach-
ing and correcting the wrong.   But in such case the bill must
contain a clear and distinct charge of fraud.   Therefore, when·
·ever the bill sets out a clear case of fraud, parol evidence will be
admitted to prove it, even if the effect of such evidence is to con-
tradict, vary, altar, or destroy written instruments.   The mere
refusal of a grantee to execute, or the denial of the existence of
an invalid parol trust upon which she promised to hold the prop-
·erty, is not such a fraud as will take the case out of the statute.
But where a valuable interest passes to one on the faith of a con-
tract he refuses to perform, equity will compel restitution or give
·other appropriate relief.   In any case if the trust arises from
the acts of the parties, and not exclusively from their agree-
ments, the statute of frauds is not a bar to the proof."   Perry on
·Trusts, sec. 226.

But the bill is defective in this, that it fails to allege or charge
·that the defendant, Ann McConaughey, fraudulently procured
·the making of said conveyance to her.   It should have charged
·that she procured the making of said conveyance by falsely and
fraudulently representing and promising that she would immed-
iately reconvey a certain portion of the land in accordance with
·the agreement of partition, and took said conveyance fraudulent-
ly intending, at the time, not to comply with her said promise to
re-convey, and, with the like fraudulent intent, has refused to
comply with said promise.   *Manning* v. *Pippen,* 95 Ala. 537;

*Alaniz* v. *Casenave,* 91 Cal. 41; Perry on Trusts, sec. 226.  The bill only charges that, after having made this agreement and obtained the conveyance in pursuance thereof, she refused to perform.  This is not enough.  Mere breach of the agreement does not raise a trust and take the case out of the statute of frauds.  Browne on Stat. of Frauds, sec. 94a, 439.  The same work, at sec. 441, says: "A simple illustration of the rule that when the Stat. of Frauds has been used as a cover to a fraud, equity will relieve against the fraud, notwithstanding its provisions, is found in a case reported by Viner, and stated by him to have occurred in Lord Nottingham's time, and to have been the first instance in which any equitable exception to the statute appears.  There was a verbal agreement for an absolute conveyance of land, and for a defeasance to be executed by the grantee; but he, having obtained the conveyance, refused to execute the defeasance and relied upon the statute; but his plea was overruled, and he was compelled to execute according to his agreement.  Here the attempted fraud consisted not merely in refusing to do what he agreed, but in deceiving the plaintiff out of his property.  And the case is analagous to that put by Lord Maccelsfield, as falling within the rule, where one agreement in writing is proposed and drawn, and another fraudulently and secretly brought in and executed in lieu of the former."

It may be that the facts set up in the bill, if established by evidence, would sustain the charge of fraud.  Browne on Statute of Frauds, sec. 94a, 439.  But the bill ought to charge fraud in express terms.  Nothing is to be considered here but the bill, as the case stands upon the ruling of the court upon the demurrer, and the count say the bill must contain a clear and distinct charge of fraud.  *Irnham* v. *Child,* 1 Bro. Ch. 94; *Portmore* v. *Morris,* 2 Bro. Ch. 219; *Forsyth* v. *Clark,* 3 Wend. 637; *Gouverneur* v. *Elmendorf,* 5 Johns. Ch. 79; *Kennedy* v. *Kennedy,* 2 Ala. 571.  In *Troll* v. *Carter,* 15 W. Va. 567, 583, JUDGE GREEN directs particular attention to the want of any charge of fraud in the bill or the evidence.

Intent is a necessary element of fraud in such case  The agreement may have been made, and the conveyance taken, in good faith and with an honest intention to reconvey, and the fraudulent design of dishonestly retaining the property or disposing of it in violation of the agreement may have been formed

afterwards. This would amount to no more than a breach of the agreement, and the bill alleges nothing inconsistent with such a state of facts. The court cannot assume that there was fraud in the procurement of the conveyance. It must be alleged as well as proved. It is fraud in acquiring the title, not merely in the retention of it, that raises the trust.

If the evidence, establishing such fraud, were before the court, an amendment could be allowed, but the court cannot say whether an amendment would avail anything or not. Hence, under the rule, the plaintiffs having declined to amend in the court below, the decree of dismissal must be affirmed.

For the foregoing reasons, I concur in the decision, but not in all the reasoning of the opinion prepared by Judge McWhorter.