# CHARLESTON

## WAY *v.* MAYHUGH.

57 175
60 275

Submitted September 13, 1904.   Decided February 14, 1905.

1. WRITING UNDER SEAL—*Deed—Parol Evidence.*

> Parol evidence, to prove a conveyance to be a mortgage, which is on its face an absolute deed, must be clear and unquestionable. (p. 185.)

2. PROOF—*Failure of.*

> A case in which the evidence does not sustain the allegations of plaintiff's bill.   (p 187.)

Appeal from Circuit Court, Wood County.

Bill by Eliza E. Way and others against C. M. Mayhugh and others.   Decree for defendants, and plaintiffs appeal.

*Affirmed.*

V. B. ARCHER and WM. BEARD, for appellants.

McCLUER & McCLUER, REESE BLIZZARD, and M. A. KENDALL, for appellees.

McWHORTER, JUDGE:

· On the 20th of December, 1902, S. S. Way and Eliza E. Way, his wife, executed to S. S. Stone, trustee, a deed of

trust on thirty-one acres of land in Wood county, to secure the payment of $75.00 to Joseph Way, evidenced by a note of the same date, payable in one year after date, with interest. The grantor, S. S. Way, afterwards died. On the 14th of March, 1896, the trustee, Stone, having advertised the property, sold the same, at which sale it was knocked off to Mrs. Way at $400.00 cash. On the 18th day of March, four days after the sale the trustee, Stone, conveyed the property to Mrs. Way, in consideration of the amount of her bid. On the same day Mrs. Way conveyed to her brother C. M. Mayhugh "In consideration of the sum of five hundred dollars paid and to be paid as follows, to-wit: Four hundred dollars cash in hand paid, the receipt whereof is hereby acknowledged, and the residue in six months from this date as is evidenced by a note bearing even date therewith for one hundred dollars, the party of the first part doth grant and convey unto the party of the second part with covenants of special warranty," the said thirty-one acres described by metes and bounds. And on the 12th day of November, 1897, C. M. Mayhugh executed an oil and gas lease of said property to J. W. Kelly, lessee, for five years from the date of the lease "And as much longer as oil or gas is found in paying quantities thereon; yielding and paying to the lessor one-eighth part of the oil produced and saved from the premises, delivered free of expense into tanks or pipe lines to the lessor's credit." And two hundred dollars per year for each gas well, etc. And on the said 12th day of November, 1897, C. M. Mayhugh, Clarence C. Hill and John J. Bradley, parties of the first part, executed to J. W. Kelly of the second part a deed of conveyance as follows: "Witnesseth: That for and in consideration of the sum of Eighteen Thousand Five Hundred Dollars ($18,500) cash in hand paid, the receipt whereof is hereby acknowledged, the said parties of the first part do grant, convey, assign and set over with general warranty four (4) oil and gas wells and machinery, tanks and fixtures thereto belonging and now in use in the operations of the same, together with all the oil and gas in and under thirty-one acres of land of said Mayhew, this day leased to said party of the second part, excepting and reserving to said Mayhew, one-eighths (1-8) part of the oil produced and saved from the premises, being the one-eighth (1-8) royalty reserved to said

Mayhew under the lease aforesaid—all of said property and oil being on and in and under said tract of thirty-one acres granted to said Mayhew by Eliza E. Way by deed dated March 18th, 1895, and recorded in Deed Book 89 Page 278.    To have and to hold the property aforesaid until the said J. W. Kelly, his heirs and assigns forever." And on the same day, said 12th day of November, 1897, J. W. Kelly conveyed the same to Alfred S. Carr in consideration of the sum of $20,000, ten thousand dollars of which was paid in cash and the receipt acknowledged, and ten thousand dollars to be paid in installments, as set out in said deed, with seven per cent. interest, reserving to said Mayhugh his rights therein as provided in said lease, all of which deeds and leases were duly recorded at once upon their execution.    On the 19th day of May, 1902, Eliza E. Way, Albert Leonard Way, Agnes Minerva Flower, late Agnes Minerva Way, and Gussie Seldon Way, an infant under the age of twenty-one years who sued by his next friend, Eliza E. Way, sued out their subpoena in chancery in the circuit court of Wood county against said C. M. Mayhugh, Blanche Mayhugh, Eureka Pipe Line Company, a corporation, the Farmer's and Mechanic's National Bank, a corporation, the Citizen's National Bank of Parkersburg, a corporation, the First National Bank of Parkersburg, a corporation, the Wood County Bank, a corporation, the Second National Bank, a corporation, the Central Banking & Securety Company, a corporation, S. C. Tanner and William B. Farris, and filed their bill against said defendants praying that the said deed executed by Eliza E. Way to C. M. Mayhugh, for the said thirty-one acres of land be declared to be a mortgage for the repayment to the said Mayhugh of the $400 loaned by him to said Eliza E. Way at the time said deed was made, and for an accounting to the plaintiffs for the oil taken from under the land, and that the proceeds after paying the four hundred dollars and its interest be paid to plaintiffs, and the said Mayhugh be required to reconvey to plaintiffs the said thirty-one acres of land; that a special receiver be appointed to take possession of any and all money and other property in the hands of the said banks and to sell all oil and hold and preserve all the other property and its rents and profits and that all said defendants be required to answer and state fully what they have in their hands of money, securities.

or other property held by them and each of them belonging to, or to the credit of C. M. Mayhugh at the institution of this suit, and filed a *lis pendens* against the defendants C. M. Mayhugh and Blanche Mayhugh and which was to affect the said thirty-one acres as well as a certain house and lot on East side of Avey street in the city of Parkersburg fraudulently conveyed to defendant Blanche Mayhugh by defendant S. C. Tanner by deed dated September 27, 1900, and a certain house and lot in the town of Williamstown and other lands described in the notice of *lis pendens* and claiming their right to recover from the said C. M. Mayhugh the sum of $75,000 and interest and costs and to have the deed made by plaintiff Eliza E. Way, of March 18, 1896, conveying the said thirty-one acres of land declared a mortgage, and sued out an attachment and had the same levied upon the said lands and served upon the Eureka Pipe Line Company and said defendant banks as garnishees.

The defendant Mayhugh, filed his answer denying all the material allegations of the bill.

Some eight hundred pages of depositions were taken and filed in the cause by the plaintiffs and defendants. On the 26th day of May, 1903, the cause was finally "Heard upon the bill filed by complainant in the cause, and exhibits therewith filed, proceedings thereon had at rules, upon the process regularly executed on the defendants, upon the answer of C. M. Mayhugh, defendant, filed in open court and exhibits filed therewith and general replication to said answer, upon the bill taken for confessed as to all the defendants not answering upon the affidavit for attachment filed in said cause by the complainant, and upon the plea in abatement filed by C. M. Mayhugh defendant, to said attachment, with general replication thereto and issue thereon joined; and upon motion to quash and abate the said attachment, upon the depositions taken and filed in behalf of the plaintiffs and exhibits therewith as well as on behalf of the defendant in said cause and exhibits therewith; upon the plea of statute of frauds filed by the defendant C. M. Mayhugh and replication thereto and issue joined, upon the affidavit of William Beard flled in said cause on May 26th and upon affidavit of Judge Reese Blizzard and J. G. McCluer filed in said cause on May 26, 1903; upon the former orders and decrees made and entered in said

cause; and upon the papers filed and read therein, and was argued by counsel for plaintiffs and defendants; upon mature consideration whereof the court is of opinion that the plaintiffs have failed in the proof of the allegations contained in their said bill of complaint and are not entitled to the relief prayed for. It is, therefore, by the court adjudged, ordered and decreed that the said bill of complaint filed in this cause be and the same is hereby dismissed." The court further decreed that the grounds of attachment alleged and set forth in the affidavit filed in the cause by plaintiff were not sustained by the evidence and proof taken, and quashed and dismissed the attachment, and the garnishees were directed to turn over to defendants C. M. Mayhugh and Blanche Mayhugh all property held by them by virtue of said attachment and levy of same, and gave judgment to C. M. Mayhugh and Blanche Mayhugh for costs against plaintiffs, from which decree plaintiffs appealed.

The question at issue in the cause is one of fact, whether the conveyance by Eliza E. Way, of the thirty-one acres of land in controversy is an absolute deed, as it appears to be upon its face, or was it executed for the purpose of securing to the vendee C. M. Mayhugh the four hundred dollars furnished by Mayhugh at the sale, being the amount of the bid made by Mrs. Way in the purchase of said property, and to be held by him in trust until he received back the said $400 and its interest, then to be reconveyed to the said Eliza E. Way.

It is claimed by appellants in their brief that the defendant Mayhugh expressly admits that he had loaned to Mrs. Way $400 with which to "bid in" the property. In his answer he recites the allegation contained in plaintiff's bill, that he said to plaintiff to let the farm be sold by the trustee and she become the purchaser by personally bidding on the land and no one would bid against her under the circumstances; that when she would bid it in, this way, respondent would then furnish the necessary money to pay for the farm and plaintiff was then to deed the farm to him and he would hold the same until he would realize therefrom money sufficient to pay him the purchase money as furnished by him and then was to reconvey the land back to plaintiff for the benefit of her and her children; and says that when he saw this statement contained in the bill it was a surprise to him because no such agreement or no such

understanding was ever thought of by respondent or ever talked of between him and plaintiff, and denies specifically, that he ever loaned her the money; and he states in his answer that when he and the plaintiff were in the office of her attorney, S. T. Stapleton, she stated that the amount of money necessary to be raised at once was $400.00 with which to pay off the pressing indebtedness against the farm, and that she was advised by her attorney Stapleton, in respondent's presence that it was better to let the farm be sold because if she were appointed guardian and administrator she could not raise the money to pay this off; that respondent then stated that when the land was sold she could buy it and he would pay $500.00 to her for the land and if at the sale she got it for any less he would pay her the difference between that and the $500.00, and that in pursuance of that proposition, after she had purchased the land for $400.00 she did convey the same to him "For the sum of $500.00 for which she was released of the payment to him of the $400.00 which he had loaned her and that he executed his note to her for the remaining $100," and filed with his answer the original deed from her to him, as "Exhibit A." He does in his answer use the words "The $400.00, which he had loaned her," but taking the whole transaction together it did not amount to loaning her the money, he simply let her have the money to make the purchase, and turned it in as part payment to her for the land under their agreement that she should bid it in and sell it to him at the price of $500.00, he making his note to her for the difference between the amount she was to pay and his purchase from her. It was in fact all one transaction; the deeds were made and executed on the same day.

The plaintiff does not dispute the fact that she took and accepted the note for $100.00 from the defendant Mayhugh, which was drawn up by her attorney Judge Stapleton, as was also her deed to C. M. Mayhugh; but the only explanation she makes of this matter as to the note is that he told her that it was necessary to make the sale legal. She afterwards showed the note in dealing with W. F. Thayer, in making a purchase of a monument for her husband's grave. Mr. Thayer states that she showed him the note and asked him if he was willing to take Mr. Mayhugh for the price of the monument. While Mrs. Way denies that she showed Thayer the note, Thayer is corroborated by Maude Sharon who says

Mrs. Way took from her purse a paper and a note from what she said, she wished him to take out of it $90.00 in payment for the monument. Witness supposed it was a note because she said her brother had given it to her; did not know whether Thayer took it from her hand or not; but he said "Well I know Mr. Mayhugh, I will take him for it if necessary, I will take him for it." The note she understood from what Mrs. Way said was $100.00. Mr. Bradley who was interested in a lease upon the property in the fall of 1897, being asked if he had any conversation with Mrs. Way as to the ownership of this thirty-one acres of land said he was ordered by his partners to strictly find out from Mrs. Way whether it was satisfactory or not, and says he surely did; that he told her about their going on to the property and wanted to know if it was satisfactory and she said whatever he did with Mr. Mayhugh would be all right; that she hadn't anything to say about it; that Mayhugh had bought it of her; that she had formerly lived there and that it had been her previous home; "She told me about him furnishing her the money; that he let her have the money to buy it in, and by her buying it in she saved a little herself. That she was to have the difference between what she bought it for and what he was to give her." And stated that the conversation was "Some days—a week or two previous to their getting a well down;" and stated that she never set up any claim to the property, and never said anything about its belonging to her, and that when they got oil "She said she was glad for his sake that he had got it and was able to keep it," referring to her brother Mathew; but never made any claim to any of the oil. E. H. Sheppard testified that he was acquainted with Mrs. Way; that he had rented the land the fall before from her and had sown wheat upon it; that after the sale of the land in March, he had a conversation with her and she stated that "She was entitled to her share of the wheat in her contract, and me sowing it, and she told me that she had sold the land; that she had nothing further to do with it except that Mathew let her have the wheat the same as contract called for; that she had nothing further to do with the place. She had sold it to Mathew; that he delivered her the wheat at threshing time at Parkersburg according to contract. "She told me she was glad that Mathew had helped her to save the place from 'old Sel Stone.'

That if he had not come in and bought the place it would have gone out of the family to Stone." (Q.) "Did she tell you how much Mayhugh had agreed to pay her for the land?" (A.) "He paid her $400.00 and was to give her all over that amount to $500.00 that the place went for. And she said she held a $100.00 note; I never saw the note, but those were her words." He was also asked if he had any conversation with Mrs. Way with reference to the ownership of the property after oil was struck—"After oil was struck on the place Mrs. Way and me had some talk or talked two or three different times, we were friends and neighbors and school children together and we always talked to one another; and she told me that she was well pleased that Mathew had been able to save the place from 'old Sel Stone' as if it had not been for Mathew it would have gone out of the family."

James Wiggins testified; was asked whether he had any conversation with Mrs. Way with reference to said land "Well I was there on the porch—sitting there and Mr. Mayhugh came home for his supper; he had been working over on the lease—the Way farm, and Mrs. Way said she had bought the farm for $400.00 and sold it to Mack for $500.00; and she was glad that it turned out that way for she got something out of it; and it helped her along; and if Uncle Dick had got it (I suppose she meant her father-in-law) she would not have got nothing." W. P. Roach was asked whether he had a conversation with Mrs. Eliza E. Way with reference to the sale of the thirty-one acres while he was lease boss, and what the conversation was, and where? (A.) "Well, sir, it was on the lease near the house that was on the farm. Mr. Sheppard lived there and I was boarding at Sheppard's house. It was in the yard, close to a shade tree, at the east corner of the house in the afternoon. Mr. Davidson had been there talking with Mr. Mayhugh about the interest in that property. Mrs. Way was there and we talked about the wells and the product that we had there from the wells. Mrs. Way and I was talking about it and I said to her that Mr. Mayhugh had been offered $10,000.00 for his half interest in the property and she said that it was quite a lot for the property, but she made this remark to me in the course of our conversation, 'Little did she think in less than a couple of year ago when she sold Mayhugh that property for $500.00 that it would

now demand $20,000,00'." He states that Mr. Mayhugh and
Mr. George Chichester and several others were present at
said conversation. G. M. Chichester also testified that in
said conversation Mrs. Way said: "Little did she think in less
than two years when she sold that land for $500.00 it would
now be worth $20,000.00; in less than two years." W. B.
Grier testifies that about the latter part of September or first
of October, 1897, he was figuring after the property and had
an agreement with Mayhugh; he says he went to see May-
hugh and he got over there about two o'clock in the after-
noon. Mayhugh was over to the lease; that he and Mrs. Way
had some talk about buying the property and he hardly
remembers what was said about it at that time, any more than
at that trip he went out to notify Mayhugh that they would
take the lease; that he spoke something about the title of it
and asked how Mayhugh came by it and she gave him to
understand that the property belonged to Mayhugh; that the
title was his; that either Mrs. Way, or Mayhugh, after he
came home showed him the deed marked "Exhibit A" with
answer of Mayhugh, which is the deed of March 18, 1896,
from Eliza E. Way: his recollection is that the paper was
shown to him before Mayhugh came in; that he was there an
hour or an hour and a half before Mayhugh came; he says there
was some one else there, he supposes she was Mrs. Way's
daughter; that Mrs. Way said nothing about any claim to the
property. . This was at Mr. Mayhugh's house.

It is claimed by appellants that Mayhugh stayed at Mrs.
Way's house the night before the sale and there made the
agreement that they rely upon to buy the property for her
and reconvey it to her on the repayment of the money. Mrs.
Way and her daughter Agnes, testify to the fact that he
stayed there that night, and claim that he slept with Mrs.
Way's son, Albert, that night; but it is proven by Mrs.
Sharon and several others of their family that he came to their
house before supper, ate supper with them, walked out after
supper with O. C. Sharon, came back to the house, went to
bed, stayed all night and ate breakfast there in the morning
and did not see Mrs. Way until after breakfast when she
passed their house. Mrs. Sharon is a sister of Mrs. Way and
Mr. Mayhugh. A rather significant fact is that the young
Albert Way, who is one of the appellants here, and with

whom appellants claim Mayhugh slept that night at Mrs. Way's house was not put upon the witness stand to confirm the statement of his mother and sister, while they are flatly contradicted by Mayhugh and the Sharons. Before the sale Mrs. Way consulted with her attorney, Judge Stapleton, concerning the sale and he advised her, and drew up the deed from herself to defendant Mayhugh, and the note for $100.00, the deferred payment of the purchase money, and yet he had no recollection of any such conversation or arrangement as that claimed by plaintiff Way that Mayhugh was to hold the land in trust until he got his money back with interest, and was then to reconvey the land to Mrs. Way. This is a very strong circumstance in support of the position of defendant, that it was an absolute sale without condition or understanding. In *Troll* v. *Carter*, 15 W. Va. 567, (syl. pt. 3), it is held: "If a party obtains a deed without any consideration upon a parol agreement that he will hold the land in trust for the grantor, such trust will not be enforced, as it would violate the statute of frauds and this general rule, to permit parol evidence to establish such a trust." It is not pretended that the deed was procured by Mayhugh without consideration; but that he is holding it in violation of his parol agreement to reconvey. It is not denied that he furnished the $400.00, or that he made his note for the $100.00. In the same case last above cited, (syl. pt. 5), is that "If a party obtains a deed for a valuable consideration, but agrees by parol with the grantor, at the time the deed is made, that he will hold the land in trust for third parties, whether a court of equity will enforce such a parol trust is questionable, and the decision of this point in this case is waived." So it seems to have been questionable in the mind of the Court as to whether such parol agreement would be enforced even where the trust was created for the benefit of third parties. Syllabus three, above cited is clearly right, if a deed, absolute on its face conveying property for a price shown to be at the time of conveyance the full value thereof, as in this case it is shown, and from any cause the vendor should become dissatisfied with the contract he could have the same rescinded and the property reconveyed to him, and no purchaser would be safe in his purchase; and for this among other reasons, point 1 of the syllabus in the case just cited, "Porali evdence cannot be admit-

ted to vary or add to a deed, as a general rule," has long been adopted as a safe and just rule. Points 1 & 3 in said cause (*Troll* v. *Carter*) are re-affirmed in *Richardson* v. *McConaughey*, 55 W. Va. 546, (47 S. E. 287).

Mr. Hogg in his Eq. Prin., page 715, in treating of the question whether or not a deed absolute on its face is in fact a mortgage, says: "The court seeks to ascertain the original and true intentions of the parties to the instrument by means of some well recognized rules and principles applying in such cases; that while these are not *criteria* determining the judgment of the court in all cases they are given great weight in concluding the question to be decided. Among these principles invoked by the courts are: First, the admission of the parties that the grantor after the execution of the deed owed the consideration thereof to the grantee as a debt. Second, the gross inadequacy of the consideration. Third, the retention of the possession of the land by the grantor for many years after the making of the deed without the payment of any rent. Fourth, that there had been negotiations pending between the parties for a loan. Fifth, that the grantor was hard pressed for money, and the grantee was a known money lender. Sixth, that the parties did not apparently consider or contemplate the quantity or value of the land when the deed was made." As to the first of these stated principles as applied to the case at bar, as we have seen, it is by no means an admitted fact that the grantor was debtor to the grantee in the amount of the consideration; it is denied by the defendant Mayhugh, in the most positive manner both by answer and deposition, and it seems to have not become a fact in the mind of the plaintiff Eliza E. Way until several years after the conveyance by her to Mayhugh, and there is but little evidence outside of that of Mrs. Way herself, even tending to show that Mayhugh ever admitted that the consideration of $400.00 was a debt due from Mrs. Way to him. "Whenever the courts permit parol evidence to be received to establish a trust, they always require such evidence to be clear and unquestionable, to produce such result." *Troll* v. *Carter*, *supra*, (syl. pt. 7); *Porter* v. *Hayfield*, 21 Pa. St. 214; *Leeman* v. *Whitley*, 4 Russ. 423 (5 Eng. Cond. Ch. Cases 746); *Hagan* v. *Jaques*, 4 C. E. Green 123; *Squire* v. *Horder*, 1 Paige 494; *Farmington* v. *Barr*, 36 N. H. 86. As to the

second, "The gross inadequacy of the consideration," the overwhelming weight of the testimony is to the effect that $400.00 was all the land was worth at the time of the sale, in March, 1896, the most of the witnesses placing the value much lower, $8.00 to $10.00 per acre. Stone, the trustee, testifies that he tried to make the property bring all it would bring; that it was a fair sale, and that he sold it at the highest bid he could get for the land.

It is not claimed that the grantor retained possession of the property after the sale; her vendee permitted her to receive the wheat rent in kind from the tenant Mr. Sheppard, in the fall of 1896; but Mayhugh took possession of the land and was some fourteen months trying to find parties who would assist him in developing it as oil territory, and succeeded in a little less than eighteen months in such development. After the development defendant Mayhugh must have received back his $400.00 and interest in a very short time, as on the 12th of November, 1897, he sold the four (4) wells already drilled and the oil in the thirty-one acres at the price of $18,500.00 and this was all brought to the knowledge of plaintiff, and yet she not only did not institute suit to have the land reconveyed to her, but failed to even express any dissatisfaction with the situation, or to demand redress in any way. Defendant Mayhugh testifies that the first intimation he ever had, that plaintiff was claiming any rights in the matter was when he was served with the subpœna in chancery in this cause. It cannot be said that it appears from the record of the evidence that there had been negotiations pending between the parties for a loan. It is true Mrs. Way claims that she applied to Mayhugh to loan her the money and that he agreed to let her have it; but this is denied by the defendant and the charge is not sustained by the evidence. It does appear that Mrs. Way was hard pressed for money; but it does not appear that Mayhugh was a known money lender or that he was a moneyed man, or that he had even that amount of money at his command from his own resources, but it is shown that he had to borrow some of the money to have the necessary amount on the day of sale. As to the sixth principle "That the parties did not apparently consider or contemplate the quantity or value of the land when the deed was made," the evidence shows clearly that the parties did consider the value

of the land and the quantity, and that Mrs. Way herself said there was more against the land than it was worth, and she didn't want to have anything to do with it. Taking the case altogether, after carefully reading the depositions and considering these two facts; first, that the testimony on the whole largely preponderates in favor of the defendant, and that the circuit court was right in concluding that the plaintiff had failed to support the allegations of her bill by the evidence; and second, that if this were not clearly the case, the evidence is so conflicting and of such a character that the case can be well brought within the rule first laid down by JUDGE SNYDER in *Smith* v. *Yoke*, 27 W. Va. 639, and since cited and approved in many cases by this Court, notably: *Doonan* v. *Glynn*, 28 W. Va. 715; *Prichard* v. *Evans*, 31 *Id.* 137; *Bartlett* v. *Cleavenger*, 35 *Id.* 719; *Richardson* v. *Ralph-snyder*, 40 *Id.* 15; *Fitzgerald* v. *Phelps*, 42 *Id.* 570; *Chrislip* v. *Teter*, 43 *Id.* 356; *Smith* v. *Johnson*, 44 *Id.* 278.

There is no error in the decree and the same must be affirmed.

*Affirmed.*