# CHARLESTON.

GILLASPIE v. JAMES et al.

Decided November 24, 1900.

1. SPECIFIC PERFORMANCE—*When Enforced.*

   To enable a court to enforce a specific contract for the sale or real estate the contract must be established by competent proof to be clear, definite, and unequivocal in all its terms. And the contract proved must be that charged in the bill. (p. 286).

2. COMMISSIONER'S FINDING—*On Facts—Force of.*

   Where questions purely of fact are referred to a commissioner to be reported upon, the findings of the commissioner, while not as conclusive as the verdict of a jury, will be given great weight, and snould be sustained, unless it plainly appears that they are not warranted by any reasonable view of the evidence. This rule operates with peculiar force in an appellate court, where the findings of the commissioner have been approved and sustained by the decree of the inferior court. (p. 288).

Appeal from Circuit Court, Tucker County.

Bill by C. D. Gillaspie against C. F. James and M. F. Wiley. Decree for plaintiff, and defendants appeal.

*Affirmed.*

L. HANSFORD, for appellants.

E. D. TALBOTT and GEO. P. SHIRLEY, for appellee.

ENGLISH, JUDGE:

On the 20th of November, 1895, W. B. Maxwell, special commissioner appointed by the circuit court of Tucker County in the chancery cause of *Horner & Co.* v. *Thompson & James,* made sale of a parcel of land situated in the town of Hendricks in said county, at which sale C. F. James, wife of L. W. James, became the purchaser thereof, for two thousand five hundred and fifty dollars, of which sum she paid in cash on the day of sale one hundred and thirty-one dollars and twenty-one cents and for the residue executed to said special commissioner her three promissory notes for eight hundred and six dollars and twenty-six and one-third cents each, payable in six, twelve, and eighteen months from date with interest, C. D. Gillaspie, M. F. Wiley, and J. P. Porter becoming her sureties, and said sale was confirmed to her.

When the first and second notes respectively mateured said Special Commissioner Maxwell brought suit and recovered judgment thereon against Mrs. James, and the sureties on the notes, and said Gillaspie was compelled to pay the entire amount of said judgments. When the last of said notes became due Maxwell special commissioner brought a suit in equity, in the circuit court, and at the November term 1897, obtained a decree for the sale of said real estate to satisfy the same, and in March, 1898, it was sold and said Gillaspie became the purchaser for the sum of nine hundred and eighty-eight dollars.

On the first Monday in May, 1898, Gillaspie brought a suit in equity against C. F. James, M. F. Wiley, J. P. Porter and others, setting forth therein the above facts as to the payment of said notes by himself, praying that the real estate of Mrs. James and of Wiley might be sold to satisfy what he was entitled to recover by reason of his having to pay said notes as security for Mrs. James.

The defendant answered the bill setting up a parol agreement between herself and Gillaspie whereby he agreed to assume the payment of said deferred notes with interest and cost, which had accrued thereon and which might thereafter accrue, and discharge her from all liability to him, as well as her sureties on said bonds, in consideration that she would transfer to him all rights and interest vested in her to said house and lot in Hendricks by reason of her purchase thereof at said commissioner's sale; that he would in fact, assume the purchase thereof in his own right on the same conditions under which she had acquired it, and perform said contract for himself, and that she should retire therefrom, which she agreed to do and did actually do; and that, as part of this agreement the plaintiff was given possession of said property and thereafter exercised control and received the rents arising from the same; that she was to do what was necessary to confer the title in fee, to said property, on plaintiff which she claims to have done; and asks that he be required to specifically perform his part of the agreement, and to that extent she prays for affirmative relief.

The plaintiff filed a special replication denying that he ever entered into any such agreement with Mrs. James, and claiming that he purchased the property at public auction to protect himself by reason of his endorsement as surety on said notes. The cause was referred to a commissioner to ascertain the real estate

owned by the defendants, the liens thereon and their priorities. The commissioner returned his report which was excepted to. The court overruled the exceptions, decreed that the plaintiff recover from Mrs. James the sum of one thousand eight hundred and eighty-seven dollars and fourteen cents with interest, and directed a sale of one-eighth of an acre, and lot No. 5 reported as her property by said commissioner subject to the liens reported thereon in order of their priority in satisfaction of plaintiff's claim. From this decree Mrs. James and M. F. Wiley obtained this appeal.

The defendant in her answer asks by way of affirmative relief the specific performance of said parol contract which she claims was entered into between herself and the plaintiff. He by his special replication denies that any such contract was ever made. In *Patrick & Lovell* v. *Horton,* 3 W. Va. 23, it was held that, "to enable a court to enforce a specific contract for the sale of real estate the contract must be established by competent proof, to be clear, definite and unequivocal in all its terms. And the contract proved must be that charged in the bill." See also Story, Eq. Juris., sec. 764; *Pigg* v. *Corder,* 12 Leigh 69; *Notheny* v. *Leftwicks,* 3 Rand 238.

Can we say that the contract alleged in the answer of Mrs. James was sustained by the proof in the cause? Having the affirmative, she must preponderate. She is the only witness who states the terms of the contract. In answer to the question, "state if at any time you made an agreement with C. D. Gillaspie relative to the payment by said Gillaspie on the store house and lot which had been sold by Maxwell special commissioner?" she says: "He was to have the property if he paid off the debt, that is, it was his proposition to take the property. Mr. Gillaspie came and proposed that he would pay off the debt if we would let him have the property. There were very few words passed between us. I accepted his proposition and turned the property over to him accordingly as his property, after which he took possession and I had nothing further to do with it and did not collect any rent afterwards and had nothing to do with it whatever."

This witness in answer to another question fixes the time at which the aggreement was made as in the early spring, and says: "The conversation between Mr. Gillaspie and myself was very short; the proposition, however, was accepted. Mr. Gillaspie pro-

posed to take the property and pay off the debt, and just the reply I made I can't remember. I gave him no deed, the court would have to make the deed, the contract was oral between Mr. Gillaspie and myself."

Now the contract alleged in the answer of Mrs. James asserting a claim for affirmative relief was that Gillaspie agreed to assume the payment of deferred installments of the purchase money with interest and costs, and discharge her from all liability to him as well as her sureties on said bonds, in consideration of her transferring to him all rights and interest vested in her to said house and lot in Hendricks by reason of her purchase at the commissioner's sale; that he would, in fact, assume the purchase thereof in his own right on the same conditions under which she purchased it, and perform said contract for himself; and that she would retire therefrom. When we refer to her testimony, she does not prove this contract, she does not state that she agreed to transfer to Gillaspie by her equitable right acquired by purchase at the commissioner's sale, and she does not prove that she and the other sureties were to be discharged from all liability to him, but states that the title was to be conferred by the court. L. W. James does not prove the alleged contract. He says:

"I was present on the morning that Harper came up with the execution. Gillaspie came in the house where my wife was and told her that execution had to be paid off that day (meaning the execution on the judgment which had been obtained on the second note) and he said, 'If I pay it off will you turn the property over to me and have the court make the deed to me?' I think." He does not state whether this proposition was accepted or not, but if it had been accepted, it does not prove the contract alleged, as the third and last installment then remained unpaid, and it does not accord with reason that Mrs. James should agree to turn the entire property over to Gillaspie on the payment of only two-thirds of the purchase money.

M. F. Wiley, one of the sureties on said note, states that Gillaspie told him that if Mrs. James would give him possession of the property he "would take it and pay for it, pay those executions that were against it." He states also that "Mr. and Mrs. James told him that Gillaspie had agreed to take the property and they had turned it over to him and given him possession"; which cannot be regarded as evidence against Gillaspie.

This witness, Wiley, went with L. W. James to J. P. Porter, the other surety on said note, and told him he would have to testify to that contract with Gillaspie, although he (Porter) had assured them that he knew nothing about it, as appears from his testimony.

The plaintiff, Gillaspie, in his testimony denies that any such contract was ever entered into between Mrs. James and himself, and his testimony is supported by the following circumstances:

On the day said second execution was paid off by Gillaspie, Mrs. James paid him seventy-three dollars to be credited on her indebtedness to him, for money paid as her security, which it is not reasonable to suppose would have been done if Gillaspie had agreed to pay the whole indebtedness and take the property.

Mrs. James fixes the time the alleged contract was made with Gillaspie as early in the spring, while her husband fixes the date some time in September.

Again, Mrs. James would hardly have turned the entire property over to plaintiff on the payment of two-thirds of the purchase money and thus deprived herself of the rents which she might have enjoyed until the last payment was made.

The fact that Wiley and James went to Porter and insisted on his swearing to this contract after he had said he knew nothing of it, show that James was not choice as to the manner in which he obtained testimony to support his case.

The cause was referred to a commissioner who reported that Gillaspie had paid as security for Mrs. James the sum of one thousand eight hundred and thirty dollars and eighty-two cents, which amount was a lien upon her property, and that Gillaspie should recover the same from her after allowing her credit for seventy-three dollars paid by her to him on September 1, 1897, and for rents collected by him, and adding interest on the balance, this would be one thousand eight hundred and eighty-seven dollars and fourteen cents. This report was excepted to by the defendants, Wiley and Mrs. James, the exception overruled by the court and the report confirmed.

In *Handy et al.* v. *Scott, Baker & Co.,* 26 W. Va. 710, this Court held: "Where questions purely of fact are referred to a commissioner to be reported upon, the findings of the commissioner, while not as conclusive as the verdict of a jury, will be given great weight, and should be sustained unless it plainly

appears that they are not warranted by any reasonable view of the evidence." This rule operates with peculiar force in an appellate court where the findings of the commissioner have been approved and sustained by the decree of the inferior court.

Applying these principles and looking to the entire case as presented by the record, taking into consideration the fact that the commissioner had the witnesses before him and heard the testimony on which he based his report, I think the circuit court committed no error in overruling the exceptions thereto, and confirming the same. The decree complained of is affirmed.

*Affirmed.*