# CHARLESTON

## MEADOWS *v.* MEADOWS.

Submitted March 6, 1906.    Decided May 1, 1906.

1. SPECIFIC PERFORMANCE--- *Verbal Gift of Land.*
     To enforce specific performance of a verbal gift of land by father
     to son, the contract of gift must be clear and definite, and the evi-
     dence to sustain it must be direct, positive, express and unam-
     biguous.   (p. 36.)

Appeal from Circuit Court, Raleigh County,

Bill by Henry W. Meadows against Joseph Meadows.    De-
cree for defendant, and complainant appeals.

*Affirmed.*

A. P. FARLEY and M. F. MATHENY, for appellant.

J. O. SUMMERFIELD, A. D. PRESTON, and LILLY & Mc-
GINNIS, for appellee.

BRANNON, JUDGE:

Joseph Meadows is an old man of seventy years.    Many
years ago he purchased a little tract of poor mountain land
in Raleigh county.    It required many years of hard toil to
pay for his little home and get a deed for it.    It contained
only 105 acres.    He had three sons, Henry, Charles and
George, Henry the oldest.    Henry married early and went
to live with his father-in-law.    Soon he moved to this tract
of his father's and upon one end of it built a log cabin of
one room, and later some addition very humble in character,
and set out an orchard and cleared a good deal of land.    The
father furnished some of the trees.    He had a large family
of twelve children, was very poor.    He was on this home
place eighteen or twenty years.    Some trouble springing up
between him and his old father, in 1904 he brought a chan-
chery suit against his father to compel him to make a deed
to him for a section of the home tract containing about thirty-
five acres.    He claimed that twenty years before his father
had given him that part of the home tract, and that on the
faith of the gift he built a house and cleared land and other-
wise improved the property.    The circuit court dismissed the
bill.

It is useless to detail evidence.    It is absolutely conflicting.

Henry and his wife and two daughters swear to a declaration, or rather declarations, made by the old man to the effect that Henry was to have that part of the tract marked by a certain line of trees dividing it from the remainder; that it should never be taken from Henry. That, in connection with improvement, is the whole of the plaintiff's case. The old man denies Henry's claim. He declares that he always told the boys that they should have the land when he and his wife were done with it; that Henry should live down on the lower end of it, Charles on another part, and George the old home section, that is, the house section where the old man lives. Now, there is no doubt that the old man talked in that way; that is quite natural and fatherly, and we can readily see that the old man contemplated this division. But did he intend to oust himself and his old wife while they lived? Charles and George fully corroborate the old man by saying that they did not expect their parts while their father lived; that the talk between father and sons was that the old man would retain the land as long as he and his wife lived. Charles was in possession of one section of the land, but he did not expect any deed depriving the father of it during his life. He swears that his father told Henry that he would never make a deed, and that he would hold the land during his lifetime; that he told them all that he intended the place for his sons when he and his wife were done with it. George swears that he knows that his father never gave the possession of the land in controversy to Henry absolutely; that his father told them all that he meant to keep the land as long as he and his wife lived, and then it was to go to the children. He swears, like Charles, that he heard his father tell Henry that he did not intend to deed him the land as long as he lived. He says he never heard of any claim by Henry until recently. Are we to infer that because the father let a young married son build a little log cabin on his land to make bread and meat that the father intended absolutely to part with his ownership and control, and thus deprive himself and his wife of the means of support? Especially when the tract is very small and hardly equal to the support of his own family? If that be so, if that calls for specific performance, how many fathers would be brought to penury? Courts ought not to thus hold from such mere possession. How natural for a son

to settle on his father's land and clear a few acres and plant an orchard for the support of himself and family. In the absence of a specific, definite contract, are courts to hold that mere loose declarations of a father that he intends to give one son a certain end of his place shall call for specific performance? Particularly when the tract is so small? That would be against the interest of father and child; for if that be so the father would not dare to let his child go upon any of his land, as it might injure him and other children. A witness named Clemens produced as credible by the plaintiff swears that the old man said, what many fathers have said, that Charley and Henry both had built, the third boy, George, was to live where the old man lived, and "that he didn't expect to make the boys the deed then, but that he was going to hold the land for him and his wife then as in their old days they might need it." He intended to will it to them. Now, this is the whole truth. The evidence is not only conflicting but it preponderates to sustain that theory of the case. It is proven that Henry talked about moving away, and was seeking another home. He does not deny, but admits, that his father sold nearly all the poplar timber from the land he claims. Why did he allow him to do so if he himself owned the land? And he never paid a cent of taxes on the land through many years. His father swears he refused to pay a part of the taxes on the land. Why wait twenty years for a deed? The law properly applicable to such a case is well stated by JUDGE LUCAS in *Harrison* v. *Harrison*, 36 W. Va. 556. While admitting that oral gifts of land by father to son, if definite and fully sustained by evidence, will be enforced, yet it is not to be inferred from a son's going into possession of his father's land and making small improvements that the father gave the son the land; that loose declarations of the father are not sufficient evidence of such gift. "A contract between a parent and child, from the nature of the relation, requires to be proved by a kind of evidence much stronger than that which might suffice between strangers. The evidence, in case of a parol gift from father to child, should be direct, positive, express and unambiguous, and its terms clearly defined." That settles this case. JUDGE LUCAS did only repeat fixed law, but I have been struck with the practical force and applicability of the expressions of the

case to cases constantly arising. The case preponderates in favor of the defence on the evidence; but aside from that how can we be asked to overrule a circuit judge upon such frail evidence and upon evidence absolutely conflicting?

We therefore, affirm the decree.

*Affirmed.*