# WHEELING

FISHER *v.* BERWIND *et al.*

Submitted September 6, 1907.   Decided June 10, 1908.

1. PRINCIPAL AND AGENT—*Employment of Subagent—Ratification.*
   A principal whose agent employs a subagent is liable for the compensation of such subagent if the employment is authorized and ratified on the part of the principal by his adopting the acts of the subagent.   (p. 305.)

2. APPEAL AND ERROR—*Decree—Review.*
   In an equity cause turning wholly on the weight of the evidence, a decree not contrary to a plain preponderance thereof will not be reversed.   (p. 316.)

Appeal from Circuit Court, Webster County.

Bill by Jake Fisher against the Berwind-White Coal Mining Company and others. Decree for plaintiff, and E. J. Berwind and others appeal.

*Affirmed.*

TALBOT & HOOVER and W. B. MAXWELL, for appellants.
HAYMOND & FOX, for appellee.

ROBINSON, JUDGE:

A written agreement, dated November 22, 1902, between F. P. Rease and Jake Fisher, stipulated that the latter was to use his best efforts to acquire, without delay, under the direction of the former or his legal representatives, for the former in his name as trustee, at prices as low as possible and satisfactory to him, such coal lands and coal mining rights in Webster and Randolph counties as he or his legal representatives should from time to time indicate. Rease was to pay Fisher the sum of fifty cents an acre for all such coal lands actually purchased. In the event that none of said lands should be taken up by purchase, Fisher was to be paid $200 per month and his expenses for the time he was actually employed. Pursuant to this contract, Fisher secured options in the name of Rease, trustee, covering a large territory of coal lands in the counties aforesaid. This work was begun promptly and was prosecuted to such an extent that in June, 1903, notices of acceptance in the name of Rease, trustee, were served on landowners who had optioned as aforesaid, and more than 5,000 acres were accepted according to the terms of the options. There was delay in taking up and paying for the coal so purchased, but in the early part of 1905, Rease, trustee, secured by deeds, pursuant to said purchases, 860 acres of this coal. The residue of the desirable part of the territory was acquired, under these accepted options, by John T. McGraw. The total acreage actually taken under said options, in the name of Rease, trustee, and McGraw, was 5,279.8 acres.

This suit and attachment in equity were instituted by Fisher against Rease, in his individual capacity and as trustee, and Berwind-White Coal Mining Company, at December Rules, 1905, for the purpose of recovering compensation under said contract and expenses incurred in connection with the business thereunder. The above mentioned real estate deeded to Rease, trustee, was levied upon as the property of the non-resident defendant, Berwind-White Coal Mining Company, which was alleged to be the principal for which Rease was acting in the transactions aforesaid. Defendants demurred and answered. Thereafter, in the taking of depositions on behalf of defendants, it was disclosed that Rease's principal was E. J. Berwind, a non-resident, the president of said com-

pany, that company denying any connection with Rease, trustee, or the purchases by said options. Plaintiff then filed an amended and supplemental bill, making Berwind a party to the cause, with allegations charging him with liability for compensation under said contract and expenses incurred about the business thereunder, and sued out a new attachment accordingly, which was levied on the same real estate. Defendants demurred to this amended and supplemental bill and answered the same. Fisher's right to recover compensation from either the Berwind-White Coal Mining Company or E. J. Berwind was put directly in issue. The answer of Berwind admits that the 860 acres so acquired in the name of Rease, trustee, were secured and are held for him, and that he employed Rease to obtain said acreage. The proceedings by attachment were not contested in any particular. The cause rests on the merits of Fisher's claim for the compensation from the principal of Rease, and the extent of compensation, if any, due him from the principal. It is emphatically insisted that, at any rate, there is no liability to Fisher for the coal acquired by McGraw; that Rease, trustee, did not purchase the coal acquired by McGraw. The decree appealed from adjudges that Fisher is entitled to be paid by Berwind the sum of $3,552.72, with interest from the date of the decree, and costs. This sum is recited to be founded upon compensation for his services under said contract, expenses specially incurred by him at the instance of defendants, and interest from July 1, 1903, to the date of the decree; and the same is further decreed to be a lien, by virtue of the attachment, upon the real estate levied on as aforesaid.

Decision of this case is wholly dependent upon the evidence. The bills are sufficient, and we observe that the demurrers are really not relied on in the brief of appellants. No mooting of principles of the law is presented. The whole matter resolves itself into this: Is the decree justified by the evidence? We find the evidence relating to material features of the controversy to be conflicting. But can we say that the findings and decree of the circuit court are against the plain preponderance of that evidence? This controlling question calls upon us to consider (1) whether the relation of agency on the part of Fisher to Berwind is established; (2) whether, if there was such relationship, Berwind purchased the coal

afterwards acquired by McGraw and should pay Fisher compensation therefor; and (3) whether, on the whole, the amount decreed is sustained.

It is noted that but little reliance is placed on the contention that Fisher did not become the agent of Berwind in the transactions had in pursuance of said contract, and rightly so, for it appears clearly that such relationship existed. Berwind became the owner of the 860 acres of coal through the subagency of Fisher. This fact is manifestly shown, and also that Berwind's manager in Philadelphia was in touch with the work which was being carried on by Fisher, and was advising with him in the premises, personally, as well as through Rease. Fisher's employment was thus impliedly authorized and ratified by Berwind, and the latter is liable for his compensation. Mechem on Agency, sec. 690. The demand of plaintiff seems quite consistent with the principle adopted in many cases, and enunciated in Story on Agency, sec. 389, as follows: "A subagent employed by an agent, to do a particular act of agency, without the privity or consent of the principal, may acquire also a lien upon the property thus coming into his possession against the principal, for his commissions, advances, disbursements and liabilities thereon, if the principal adopts his acts, or seeks to avail himself of the property or proceeds acquired in the usual course of the subagency." In line with this doctrine, and applicable to the facts before us, in *Dewing* v. *Hutton*, 48 W. Va. 576, it is held: "A person who employs an agent to buy up timber lands and such agent engages the services of another for certain compensation agreed between them cannot escape the payment of such compensation if he accepts the purchases secured thereby. If he would enjoy the benefits he must assume the burdens in whole and not in part."

The most serious contention arises as to allowance of compensation to Fisher on the coal which McGraw obtained. The trend of the answers and the brief of appellants, while denying liability, is that they are willing to settle with Fisher on the basis of fifty cents an acre for the 860 acres deeded to Rease, trustee. But they insist that only the 860 acres were actually purchased by Berwind, and that Fisher was not directed or authorised to accept for Rease, trustee, lands other than the 860 acres. Yet Fisher says that, expressly at the

direction of Rease, he served notices of acceptance of the 5,279.8 acres, and that thereby Rease, trustee, actually purchased for Berwind all this acreage. If notices of acceptance of the coal which McGraw obtained were served in the name of Rease, trustee, at the direction of this trustee, the coal so accepted was then actually puchased by him for Berwind, the options in his name being thereby converted into valid contracts of purchase on his part. Were such notices so served? The evidence is conflicting, but we think preponderating to the fact that they were. The circuit court evidently took this view. Certain it is that such finding is not plainly against the weight of the evidence on the point. It is shown that there were negotiations between Berwind's manager and McGraw relative to a division of the territory. Plaintiff cannot be deprived of his compensation by reason of the fact that Berwind did not avail himself of his right to all this acreage which he had purchased, or that he turned it over to another. Under the testimony, we cannot say that allowance to plaintiff of fifty cents per acre on the whole 5,279.8 acres is clearly wrong. Time and again this Court has said that a decree turning wholly on evidence cannot be reversed unless manifestly wrong, and that such decree will not be disturbed unless against the plain preponderance of the evidence. In *McCraw* v. *Bower*. 62 W. Va. 417, (59 S. E. 175), we held: "The finding of the circuit court as to facts in issue, unless against the plain preponderance of the evidence, is conclusive upon this Court."

Is the amount of the decree sustained? Under the rule just quoted we must hold that it is. As we have indicated, plaintif is entitled to $2,639.90 on the acreage aforesaid. It is clearly proved that he overpaid, by the sum of $43, the money furnished him for the business to be done under the contract. To this, of course, he is entitled. It is conceded that he should be paid his expenses incurred on a trip to Connecticut at the direction of Berwind's manager. Rease says that $65 is a proper sum to cover the expenses of this trip. We think plaintiff is also clearly entitled to expenses incurred at the special instance of his employer in going to Philadelphia for conference, the same being outside of the particular work undertaken by said contract. But as to the number of these trips, the evidence is conflicting. Fisher testifies that there

were at least four, while Rease testifies that he thinks there were not more than two. No further testimony on this point is given. And the only light we have on the amount of expenses of these trips to Philadelphia is the testimony of Rease, who says that the sum of $50 for each trip is ample. A finding that four trips were made, with total expenses of $200, is, therefore, not contrary to a preponderance of the evidence. The foregoing items amount to $2,947.90. Plaintiff's services were completed in the month of June, 1903. Interest on the last named sum from July 1, 1903, to the date of said decree, makes that sum amount to even more than the decree gives plaintiff. The fact that the amount decreed is a little less than that justified by the evidence does not aggrieve appellants, nor is it a matter of which they can complain. We conclude that there is evidence on which the finding of an amount so large as is decreed can be founded, and that the finding of an amount that large is not against a plain preponderance of that evidence.

The foregoing view of the case precludes the relevancy of much that is presented in argument on plaintiff's right to elect to receive compensation at $200 per month and expenses, as latterly stipulated in the contract. Nor do we give attention to the claim of plaintiff for services as attorney in certain suits relating to the property purchased as aforesaid. While the performance of such services is established, not a word indicates their value. The circuit court properly excluded the same from consideration in fixing the amount of the decree.

The decree is not manifestly wrong, and we therefore affirm it.

*Affirmed.*