# CHARLESTON.

BRADSHAW et al. v. FARNSWORTH el al.

Submitted January 22, 1908.    Decided January 26, 1909.

1. EVIDENCE—*Parol Evidence—Admissibility.*
    The express terms of a deed' of trust cannot be contradicted by parol evidence of a promise by the beneficiary, at the time of its execution, that he would not enforce it.  (p. 31.)

2. BILLS AND NOTES—*Consideration.*
    Notes for which there is absolutely no consideration are void as between the parties thereto, and as to third persons, aside from questions of negotiability and estoppel. Equity will not allow a deed of trust made to secure such void notes to be enforced.  (p. 32.)

3. APPEAL AND ERROR—*Decree—Evidence.*
    A decree not contrary to a plain preponderance of the evidence, in a cause turning on evidence alone, will not be reversed on appeal.  (p. 32.)

Appeal from Circuit Court, Lewis County.

Petitions by J. B. Bradshaw and another against G. M. Farnsworth and others.  Decree for defendants, and plaintiffs appeal.

*Affirmed.*

C. C. HIGGINBOTHAM and A. M. POUNDSTONE, for appellants.

U. G. YOUNG, for appellees.

ROBINSON, JUDGE:

The case is as follows:  For some time prior to January, 1890, Farnsworth, as agent for Bradshaw, conducted a general store at Buckhannon.  Bradshaw resided in Virginia.  Crowley was his trusted employe there.  He was sent by his employer to clerk in the Buckhannon store.  Thus the business of Bradshaw was conducted by Farnsworth and Crowley.  In the month aforesaid, creditors became threatening, and Farnsworth, the agent, sold the stock of goods to Crowley, the clerk.  The wife of Farns-

worth, her husband joining, executed a deed of trust upon her real estate to secure the payment of certain notes made by Crowley in the transaction, payable to said agent, by whom they were endorsed to Bradshaw. This sale was attacked by creditors, who alleged it to be in bad faith and for their hindrance. But Bradshaw appeared upon the scene and personally adjusted the debts. The receiver who had been appointed to take charge of the stock of goods was discharged, and the property was turned back to Crowley, who continued in charge of the business. Rexrode, another trusted employe, left Bradshaw's service in Virginia and went to assist Crowley. Within the next year or so, however, Crowley closed out the business and returned to Bradshaw in Virginia. The notes secured by the deed of trust aforesaid, except five of them which were assigned and afterwards paid to one of said creditors, were left in the hands of the attorney who drew them. Those so remaining were twenty-five in number. Bradshaw did not take them into his possession. They remained with the said custodian, wholly without attention by anyone, for more than twelve years. The last one of these notes became due on January 1, 1893. Bradshaw, in 1896, made a general assignment in Virginia for the benefit of creditors. In 1897, the aforesaid attorney, holding Bradshaw's note for fees, instituted his suit in equity, in the circuit court of Upshur county, against Bradshaw and others for the collection of his claim, and therewith sued out an attachment against the Farnsworths, claiming against them liability in favor of Bradshaw by reason of the said deed of trust. Bradshaw and Crowley, as non-resident parties to the cause, were proceeded against by order of publication. The bill alleged such liability to be two hundred dollars, and went further than its true purport and prayed an annullment of the deed of trust as to any further liability by reason of the Crowley notes. The Farnsworths made no formal answer, but the husband in a deposition admitted liability to the extent alleged in the bill, for the purpose of settling the matter, it seems. In that deposition he in fact says that there was really no liability. There was decree for the enforcement of the deed of trust and for the payment thereby of the attorney's claim and costs to the extent of said sum. The amount admitted was about sufficient for that purpose. The decree went further, notwithstanding the Farnsworths had not appeared and asked

affirmative relief, and set aside and annulled the deed of trust as to any greater amount and discharged the land from any further liability thereunder. The Farnsworths thereafter made private sale of the land. Out of the proceeds the debt and costs in favor of the attorney were paid. The cause was thereupon ordered dismissed. During the period of these proceedings neither Bradshaw nor Crowley appeared to answer the cause, or for any purpose therein. Just prior, however, to the expiration of five years from the date of the decree aforesaid, on September 6, 1902, Bradshaw, after long absence, came to Buckhannon, in person called upon the custodian and received from him the neglected Crowley notes. He then filed a petition on his own behalf, and one on behalf of Ruckman as his assignee of said notes, for an opening of the decree and rehearing of the cause. He was within the statutory period. He made affidavit to Ruckman's petition, as agent of Ruckman. The petitions set up extensive unpaid liability upon the Crowley notes, and prayed for an enforcement of the deed of trust to pay the same. It was alleged that Ruckman was the owner of them, by assignment, because of moneys paid by him as surety of Bradshaw. Only shortly before this activity for a resurrection of the Crowley notes and the filing of these petitions Bradshaw had received a discharge in bankruptcy. The petitions were answered by the Farnsworths, who averred many things in support of their contention that there was no liability on the Crowley notes and that they in fact represented nothing. In one aspect, they rested their case upon the assertion that the sale of the store was simply for Bradshaw's benefit—a sale to himself—and that the Crowley notes were therefore Bradshaw's own liability, so to speak. They resisted fully by their answers the case made by the petitions. Among other things, they relied upon want of consideration for the Crowley notes, and therefore the unrighteousness of an enforcement of the deed of trust. They insisted that the deed of trust was merely for the purpose of strengthening the alleged pretended sale to Crowley and thereby of assisting Bradshaw in arranging affairs with his creditors, so that he might continue in business. Many depositions were taken, and by the pleadings and proof there was in fact a full rehearing of the whole matter. The deposition of Crowley was not taken, nor did he answer. He had long been in Texas, but returned and died at Bradshaw's

home in Virginia about two months after the petitions were filed.
The purchaser of the land at said private sale, though made a
party, did not appear and defend. The cause was transferred
to the circuit court of Lewis county. Upon consideration of it,
the petitions were dismissed. It is from this decree of dismissal
that this appeal is now before us.

It may seem significant that the original cause should have
gone out of its way in the bill to ask for an annullment of the
deed of trust, except as to the debt of plaintiff therein, and to
have resulted in a decree to that extent. It was not within the
province of that plaintiff's rights to ask and receive such relief.
But the case made upon rehearing, by the pleadings and proof,
properly involves such determination. Therefore, if the former
decree was in fact right, it was not error to dismiss the petitions
and by that action to let the former decree stand effective, since
it was only that which the complete and regular consideration
of the controversy made by the pleadings and proof upon the
rehearing demanded. This rehearing did not again call into
question the attachment matter and thereby the collection of
the debt due the attorney. It involved only, and yet most com-
pletely, the right to enforce the deed of trust on the one hand,
or the right to its annullment on the other. And these relative
rights are those only with which we must now deal. Therefore,
the question presented is: Shall the deed of trust be enforced or
annulled?

The Farnsworths cannot contradict their deed of trust by
showing that Bradshaw promised them that he would not enforce
it. *Towner* v. *Lucas' Ex'r*, 13 Grat. 705. That part of their
case is without standing in law; hence it must be ignored. But
Mrs. Farnsworth can show that the notes which the deed of trust
was given to secure are without consideration, and that the deed
of trust therefore secured nothing. Of this fact, parol evidence
is admissible. *Buster's Ex'r* v. *Wallace*, 4 H. & M. 82. And
such want of consideration may be shown against Ruckman, who
claims to be assignee for value. The notes are mere non-
negotiable ones. Ruckman took them, if at all, subject to the
equities between the maker and the payee. Surely it will be con-
ceded that notes for which there is absolutely no consideration
are void, not only as between the parties thereto, but as to third
persons aside from questions of negotiability and estoppel. Page

on Contracts, section 273. If the notes represent nothing, it would be palpably inequitable to allow an enforcement of the deed of trust. Do the notes represent anything? Are they merely sham pieces of paper? If they are, what conscience will permit a sale of the land to pay them?

Narrowing the case to this, its true aspect, we may observe that there is still much conflicting evidence on the point. We exclude from consideration that to which there is well-taken exception. And we have been exceedingly cautious in our consideration of all this evidence, giving ear to that only which is manifestly proper and in point of the real gist of the matter—the consideration or want of consideration in the notes. The case in this regard turns on the evidence alone. We pointedly and at once inqure: Is the decree of the court below contrary to a plain preponderance of that evidence? If it is not, we cannot reverse it. *Fisher* v. *Berwind-White Coal Mining Co.,* 61 S. E. 910. The decree is clearly justified by one view of the evidence. We cannot say that it is against a plain preponderance. The convincing deductions to be drawn from the conduct of Bradshaw in reference to the notes go a long way to support the case asserted and presented by Mrs. Farnsworth to save her land. We say that her case is strongly fortified by Bradshaw's conduct relative to the notes that he would now enforce, not against Crowley, but against the land of Mrs. Farnsworth. Bradshaw and Crowley were intimate; they were in close touch with each other. Yet there is no real explanation for a failure to collect the notes from Crowley. True, according to the deed of trust, the land was at once liable if Crowley made default in payment for sixty days. But why were the notes not in Bradshaw's hands for presentation to Crowley and an ascertainment of this default at the dates of their maturity? Why leave them for years at Buckhannon, out of reach of the payor and payee? This is passing strange. Was it because they represented nothing? Bradshaw, in 1896, was again pressed by creditors and forced to an assignment; yet he thought not enough of the validity of these notes to take them in hand and make demand upon Crowley or the Farnsworths for their payment. He did not think them of importance sufficient to justify him to inquire of the custodian about them. They were not sought by his general assignee. Bradshaw and Ruckman attempt to

excuse this failure by saying that the notes, prior to the general assignment, were made the property of Ruckman, by assignment to him. But Ruckman never considered the notes worthy of his attention or even his inquiry. He was the friend and neighbor of Bradshaw in Virginia. He was a preferred creditor in the general assignment. It secured him, it is claimed, for the very debts paid by him which were consideration for the assignment of the notes to him, if he is a real assignee. This alleged assignment of the notes is not well sustained. It savors of afterthought. There was no written evidence of it until 1902, some months before Bradshaw went to Buckhannon and then for the first time in twelve years inquired for the notes. Both Bradshaw and Ruckman say that they were verbally assigned to Ruckman long before that date; but they found it necessary to take the witness stand a second time for the manifest purpose of lengthening the period since such assignment is claimed by them to have been made, in order, we fear, to put the alleged transfer to Ruckman before the general assignment. The length of time first stated by them would have made this general assignment carry these notes, if such they were, to the trustee therein. As to this length of time, in either instance, they have contradicted their petitions. And if the notes were assigned so long ago, why did Ruckman give them no attention, make no inquiry about them, or press no demand upon the Farnsworths in regard to them? Upon the whole, why were these notes not brought from their tomb until Bradshaw was discharged in bankruptcy? If Ruckman was a *bona fide* assignee, why did he not resurrect them in person, not through Bradshaw, nor at so late a day? The neglect of these notes by Bradshaw and Ruckman, if they were really notes representing a consideration, is not satisfactorily explained. The conduct of Bradshaw and Ruckman in relation to them convincingly supports the contention that the so-called sale of the store was not a sale and that the so-called notes were not notes.

It is said that Mrs. Farnsworth is estopped from denying liability because of the liability admitted in the attachment proceedings. But the record shows that this admission was in the nature of a compromise with a creditor of Bradshaw, and that it was then claimed that there was no liability on her land. Her

action therein is not inconsistent with her cause in defense of the Bradshaw and Ruckman petitions.

It must be remembered that the sale, if pretended, did not operate as a fraud upon anyone, and that Mrs. Farnsworth was not a party to that sale. The creditors were in time paid in full, whether by an actual sale of the store to Crowley or its continued operation in his name for Bradshaw. There are statements in the pleadings, in the litigation with these creditors, which are inconsistent to a degree with the claim now made that Crowley was not the true purchaser of the store. But these cannot bind Mrs. Farnsworth and take her land from her. Regardless of them, she has shown to the satisfaction of the court below, we must say by its decree, that the notes represented nothing. She is not estopped by such statements of others. For her, in this case, it would seem that "actions speak louder than words."

Any further discussion or review of the evidence in this case and the deductions to be drawn therefrom, in justification of the decree or otherwise, would be neither interesting to the parties nor enlightening to the bench and bar. It suffices to say that the decree is not manifestly wrong. We affirm it.

*Affirmed.*