The complainant is a member of Local 863 of the International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers, an affiliate of the American Federation of Labor. He was in the employ of the defendant as a chauffeur, operating the defendant's truck from about the month of June, 1938, until about August, 1940, at a rate of $5 less per week than that fixed by union schedule. While so employed, he violated rules of his union with the result that it penalized him by suspending him from the operation of the defendant's truck for approximately one week. Not being satisfied with the action of the union, both the complainant and the defendant conceived the idea of avoiding union rules and regulations. They decided upon a plan whereby the complainant would operate the truck as an independent owner, and thus *Page 65 
evade union regulations. In pursuance of the plan, on October 10th, 1938, the defendant transferred his 1935 International Harvester truck to the complainant. It is admitted that the transfer was made with the object of circumventing union rules. The defendant says notwithstanding the transfer, it had been agreed he was to remain the real owner of the truck. The complainant denies that assertion. He contends that he acquired the absolute title to the vehicle. He says that as an independent owner he was engaged by the defendant to do his trucking, for which he was to receive $65 a week, and that from that amount the defendant was to retain $35 which was to be applied to the purchase price of $600 for the truck. He further said that under their arrangement the defendant was to pay all expenses incident to the operation of the truck.
No money appears to have passed between the parties as consideration for the alleged sale or transfer of the truck. However, at the time of the transfer, a chattel mortgage for $1,000, covering the truck, was executed by the complainant to the defendant. The complainant's assertion of the amount of the purchase price of $600 and his execution of the chattel mortgage on the truck for $1,000, certainly indicates a juggling of figures and a confusion of thought. His words and his actions plainly do not jibe.
The complainant operated the 1935 truck until on or about December 29th, 1938, when he "traded it in" for a new 1939 International Harvester truck, and was allowed thereon the sum of $737. The balance of $1,284 was secured by a promissory note executed by the complainant and endorsed by the defendant. It was to be paid in monthly installments of $71. It is alleged by the complainant that the defendant was to pay the monthly installments to the International Harvester Company in addition to the expenses incident to the operation of the truck as aforesaid.
On March 6th, 1938, the complainant executed a chattel mortgage for $1,500 upon the new 1939 International Harvester truck to the defendant. This chattel mortgage the defendant undertook to foreclose; and, on August 12th, 1940, in the course of that proceeding, he impounded the truck, *Page 66 
and advertised it for sale. The complainant thereupon obtained an order from this court restraining the sale. He now questions the validity of the chattel mortgage, and seeks its cancellation.
The complainant testified that he did not owe the defendant the sum of $1,000 on account of the purchase price of the 1935 truck as evidenced by the aforesaid first chattel mortgage; and, also, that he did not receive a $500 cash loan from the defendant as alleged. It may be observed the complainant executed both mortgages "with his eyes open" and he, presumably, was willing to play the part allotted to him in the questionable transaction.
This conflict between the parties arises entirely out of their planned deceit and misrepresentation. Their aim was to "beat and deceive" the complainant's union. The complainant accepted the title to the 1935 truck, with the decided object of circumventing the rules and regulations of his union. While that circumstance was a matter that concerned the complainant and his local union, yet the defendant connived to establish the hypocrisy, and he aided in creating a situation that was purely false and misleading. Both parties masqueraded under false colors. The complainant still retains his membership in the union he sought to trick.
The allegations in the pleadings, aired at the hearing, bear clear evidences of distorted truth. Both sides are "tarred with the same stick."
The complainant and his witnesses did not impress the court. Their demeanor, and manner of testifying demonstrated their insincerity. The complainant's supporting witnesses offered testimony which, in my opinion, was improbable, clearly manufactured, and lacked every element of truth. That criticism somewhat applies to the defendant. It can be said the complainant's readiness to hoodwink his union, which was entitled to his unswerving loyalty, would, to some extent, indicate an equal readiness to betray the defendant, his employer.
The obvious aim of these parties was to achieve success by adopting the habiliments of the cheat and the fraud. I cannot, in this case, find where truth begins and falsehood *Page 67 
ends. In Riehl v. Riehl, 101 N.J. Eq. 15; 137 Atl. Rep. 787,
appears the following:
"The Chancellor, as the trier of the facts of a case before him, is the judge of the credibility of the witnesses, and, like a jury, does not have to believe a particular witness; a witness is not entitled to credit whose testimony is inconsistent with the common principles by which the conduct of mankind is naturally governed, and the court may disbelieve a witness whenever there is reason therefor."
The quoted citation stands out as a principle to follow. In the circumstances, I feel these parties should be left in the mire of deception into which they voluntarily ventured. The bill will be dismissed.