NOLEN NAPPER *v.* LUCY RICE *et al.*

(No. 9579)

Submitted September 27, 1944.  Decided October 31, 1944.

J. S. Butts and *Ashworth & Sanders*, for appellant.

*Ned H. Ragland, O. L. Hedrick,* and *J. V. Brennan,* for appellees.

ROSE, PRESIDENT:

Prior to February 17, 1937, the plaintiff, Nolen Napper, was the owner of a lot in the City of Beckley, on which there were two dwellings, one of four, and the other of three, rooms. On that date the property was covered by a deed of trust, dated August 1, 1934, to secure W. L. Foster in the payment of seventy-one notes of even date therewith, with interest, seventy of which were for twelve dollars each, payable in from one to seventy months after date, and one note for ten dollars, payable seventy-one months after date. Under date of February 17, 1937, the plaintiff and his wife conveyed this property to John Henry Rice for a recited consideration of seven hundred dollars, and, by a writing bearing the same date, Rice and his wife leased the same property to the plaintiff for the term of two years, at twelve dollars a month, and agreeing that, within that term, upon payment to the lessor of

seven hundred dollars, with interest, and any and all taxes, insurance, assessments, and other proper costs and expenses, he would convey the property to the plaintiff, and allow as credits on said purchase price "all monthly payments, that have been made as herein provided."

On December 1, 1942, the plaintiff instituted this suit. The bill alleges *inter alia,* that the plaintiff had become delinquent in the payment of the Foster notes, and that John Henry Rice agreed "that if this plaintiff would convey said lot to the said John Henry Rice that he would pay off and discharge the obligations of the said W. L. Foster in said deed of trust upon said lot, and would hold said lot in his, John Henry Rice's own name and would re-convey said lot to this plaintiff upon the payment of the amount of money, with interest, paid out by the said John Henry Rice to the said W. L. Foster; that in pursuance to said agreement this plaintiff did grant and convey unto the said John Henry Rice, the said lot and parcel of land, * * *; that the said John Henry Rice, pursuant to said agreement did pay off and discharge the notes and obligations due W. L. Foster under said deed of trust, and did secure from the said W. L. Foster a good, proper and apt release, * * * that said John Henry Rice and his wife, Ida May Rice, by written agreement or lease dated February 17, 1937, between the said John Henry Rice and Ida May Rice, his wife, and this plaintiff, agreed to rent said premises, including the house thereon situate to this plaintiff, and further agreed with this plaintiff in said agreement that they would make, execute and deliver unto this plaintiff a deed with GENERAL WARRANTY of title, unto said premises, at any time within a period of two years from the date of said agreement, upon the payment of the sum of SEVEN HUNDRED DOLLARS ($700.00), with interest, taxes, insurance, assessments and proper costs and expenses in connection therewith; * * * that before the two year period had expired from the date of said agreement or lease, this plaintiff tendered and offered to pay to the said John Henry Rice the full amount of the purchase price, together with interest, taxes, assess-

ments and other costs and insurance as provided for in said agreement or lease, which the said John Henry Rice then and there refused to accept, and told this plaintiff that he did not need his money, and that he preferred it to be paid in small payments. * * *"; and that the plaintiff "believes he had paid in full for said premises as agreed upon between this plaintiff and the said John Henry Rice; that if any amount remains unpaid, according to the terms of said agreement, that this plaintiff is able, willing and ready to complete the payment of any balance remaining due and unpaid upon said premises." The prayer is for an accounting between the plaintiff and defendants to ascertain the amount, if any, due from plaintiff; and for a deed to the premises to be executed to the plaintiff by a special commissioner appointed by the court.

The bill, thus, appears to have been framed on the alternative theories: (1) that the plaintiff, in his lease, was given an option to purchase the property involved, that he accepted said option and offered payment in full in proper time, and now seeks specific performance of contract to convey; or (2) that the deed to Rice, the lease back to plaintiff, and other contemporaneous agreements between them, constituted a mortgage from which he now wishes to redeem the property.

John Henry Rice being insane at the time of the institution of the suit, his duly appointed and qualified committee was made a party defendant, as well as his infant children as heirs of his wife, who, at that time, was deceased. The defendants filed a demurrer to the bill of complaint, which was overruled, of which action by the court no complaint is made. The joint answer of this committee and of the guardian *ad litem* of the infant children denied all allegations of the bill tending to establish a mortgage or to show legal acceptance of the option to purchase. The defendant also filed a special plea, charging the plaintiff with laches in failing to assert his claims until after the insanity of John Henry Rice and the death of his wife, to which the plaintiff filed a special replication setting up that from January, 1939, until August, 1942, he

was incapacitated for the transaction of business, and was in certain federal hospitals for veterans, and alleging that he had promptly instituted this suit upon his discharge therefrom.

Evidence was taken at the bar of the court, and, upon the final hearing of the cause, the bill was dismissed, and a decretal judgment entered against the plaintiff for one hundred and fifty dollars as for unpaid rent for the premises, and awarding the defendants possession of the premises. From this decree the plaintiff was awarded this appeal.

The errors assigned are: (1) that the deed from the plaintiff to Rice was not held to be a mortgage; (2) that the option to purchase was not held to have been legally accepted within the time stipulated therefor, or was continued by the implied extension of the lease by the acceptance of rent at the same rate after the expiration of the lease; (3) that the court heard evidence of personal transactions between the plaintiff and the insane grantee, Rice; (4) that the court entered the order evicting the plaintiff from the premises, whereas no such relief was asked by the defendants, or justified by the pleadings and evidence in the case.

No evidence whatever was introduced relating to the transactions between the plaintiff and John Henry Rice prior to the alleged tender of the price for repurchase in November, 1938. Rice, himself, was insane and could not testify; his wife was dead, and the plaintiff and his wife were barred of giving evidence. Significantly, the scrivener of the deed and lease was not called; nor was Foster, the holder of the notes secured by the former deed of trust, each of whom might have given valuable evidence. There is, therefore, no evidence as to the negotiations between the plaintiff and Rice leading up to the deed and lease, nor evidence as to who paid the Foster notes, nor as to the amounts so paid. These notes were apparently exhibited to the court, but are not in the record.

The deed of trust indicates that there were seventy twelve-dollar notes and one ten-dollar note secured there-

by. Questions and answers in the evidence tended to indicate that twenty-six of these notes were marked "paid"; all were in the possession of and produced by the plaintiff. As apparently only twenty-six notes had been paid at the time the deed was executed, the plaintiff was then delinquent in the payment of three. Defendant introduced some evidence that the plaintiff was in some financial embarrassment. The forty-five notes which may have remained unpaid would not amount to $700.00, even with interest, on February 17, 1937, and if interest to their maturity was added, would amount to a sum considerably more than $700.00. It would, therefore, seem that the sum mentioned in the deed from the plaintiff to Rice, namely, $700.00, could not have been the exact sum required to discharge the deed of trust. Also, the release of the deed of trust is dated February 19, 1937, two days after the date of the deed and lease.

The value of the property at the date of the deed is not clearly shown. The plaintiff testified that he bought the lot in 1921 for $200.00, and erected thereon the principal house in 1924 at a cost of $1,400.00; and that at an undisclosed time he subsequently erected a second house on the rear of the lot at a cost of $200.00. The property was assessed in 1937 at $550.00. Possibly also to be considered is the fact that in 1934 the plaintiff was able to obtain a loan of $850.00, secured by a deed of trust on this property, and in 1937 was able to rent the property for $12.00 a month. Ordinarily, property cannot be mortgaged for its full value, nor could property worth only $700.00 be leased for $12.00 a month. It may also be significant that the payments to be made by the plaintiff after the execution of the deed were precisely the same as those theretofore tendered under the Foster deed of trust, except that the former bore interest. All these considerations tend to support the theory that the deed from the plaintiff was a mortgage.

But, to justify a court in treating a deed as a mortgage the evidence must be clear, positive and unquestionable. *Farley* v. *Forster*, 96 W. Va. 652, 123 S. E. 599; *Hudkins* v.

*Crim,* 72 W. Va. 418, 78 S. E. 1043; *Way* v. *Mayhugh,* 57 W. Va. 175, 50 S. E. 724. And the long established rule in this state is that a deed absolute on its face will not be held to be a mortgage unless the evidence shows that after its execution there remained a debt from the grantor to the grantee, to be secured by such a mortgage. This conclusion is based on the perfectly logical proposition that there can be no mortgage to secure a debt without the existence of the debt. This doctrine was announced early in the history of this state and has been inflexibly adhered to. In *Sadler* v. *Taylor,* 49 W. Va. 104, 38 S. E. 583, it was said that "When it is clear that after the execution of the instrument no debt remained due from the grantor to the grantee, the transaction is a contract of sale, and the debt must be given its legal effect." In *Fridley* v. *Somerville,* 60 W. Va. 272, 54 S. E. 502, this Court held that "If, after the deed was made and the transaction completed, there existed no indebtedness from the grantor to the grantee on account of the consideration for the deed, it is not a mortgage." In *Gibson* v. *Hopkins,* 80 W. Va. 756, 93 S. E. 826, we said that: "If an absolute conveyance be made and accepted in payment of an existing debt, and not merely as security for it, an agreement by the grantee to reconvey the land upon payment of a certain sum within a specified time creates, not a mortgage, but a conditional sale; and the grantee holds the premises subject only to the right to pay and demand the reconveyance. In *Farley* v. *Forster, supra,* we reaffirmed this principle in this language: "If the relation of creditor and debtor between the grantor and grantee does not exist, and the deed is made with the agreement that if the consideration be repaid within a stated time, the vendee will reconvey the land, and the whole transaction shows that no debt remained after the execution of the deed, the transaction is a conditional sale."

This rule seems to be general: "There can be no mortgage without a debt. There must be agreements for the performance of obligations other than the payment of money; but leaving this out of view, it is essential that

there be an agreement, either express or implied, on the part of the mortgagor, or someone in whose behalf he executes the mortgage, to pay to the mortgagee a sum of money either on account of a pre-existing debt or a present loan." I Jones on Mortgages, 8th Ed., Sec. 320. There is, in this record, no evidence whatever that the plaintiff was obligated to pay Rice any sum or to do any other thing, the performance of which might be secured by a mortgage. We hold, therefore, that the plaintiff has failed to show that the deed in question was, in fact, a mortgage.

But the lease did give the plaintiff a right to purchase the premises within its term. This was a binding offer, which continued during the term of the lease. No form or method of acceptance was stipulated for. Whether the oral acceptance completed any enforceable contract is a question not raised by counsel. There is authority for the validity of such an acceptance. *Crowley* v. *Vaughan,* 88 W. Va. 223, 106 S. E. 539; *Breen* v. *Mayne,* 141 Ia. 399, 118 N. W. 441; *Hetherington & Sons* v. *William Firth Co.,* 210 Mass. 8, 95 N. E. 961; *Willis* v. *Ellis,* 98 Miss. 197, 53 So. 498; *Bogle* v. *Jarvis,* 58 Kan. 76, 48 P. 558. Moreover, no plea of the statute of frauds was interposed. *Jones* v. *Shipley,* 122 W. Va. 65, 7 S. E. 2d 346; *Forman* v. *Smith,* 102 W. Va. 539, 135 S. E. 653; *Matney* v. *Blakely,* 97 W. Va. 291, 124 S. E. 918; *Campbell* v. *O'Neill,* 69 W. Va. 459, 72 S. E. 732. A contract for the conveyance of land must be proven by evidence which is clear, full and free of suspicion, else specific performance will be denied. *Pickens* v. *Stout,* 67 W. Va. 422, 68 S. E. 354; *Bell* v. *Whitesell,* 64 W. Va. 1, 60 S. E. 879; *Meadows* v. *Meadows,* 60 W. Va. 34, 53 S. E. 718; *Knight* v. *Knight,* 51 W. Va. 518, 41 S. E. 905; *Gillaspie* v. *James,* 48 W. Va. 284, 37 S. E. 598; *Harris* v. *Elliott,* 45 W. Va. 245, 32 S. E. 176; *Boggs* v. *Bodkin,* 32 W. Va. 566, 9 S. E. 891. Hence, the acceptance of the option and the offer to pay the purchase money must be proved by a high character of testimony. In *Kennedy* v. *Burns,* 84 W. Va. 701, 101 S. E. 156, this Court, speaking through Judge Williams, said: "* * * it is a well established principle of equity that, in order to entitle one to

specific performance, all the material provisions of the contract must be distinctly and clearly proven. Equity will not enforce a doubtful contract for fear of doing a greater wrong by doing so than by leaving the parties to their legal remedy. Specific performance is not an absolute right, but an equitable remedy resting in the sound discretion of the court."

Only a single witness testified to the acceptance of the option, and her testimony, under cross examination, became confused and questionable. This weakness in her evidence made corroboration important, and would sustain the inference that her husband, if called to testify, would not have agreed with her. *Workman* v. *Clear Fork Lumber Co.*, 111 W. Va. 496, 163 S. E. 14; *Miller* v. *Miller,* 111 W. Va. 338, 161 S. E. 566; *Nichols* v. *Camden Interstate Railway Co.*, 62 W. Va. 409, 59 S. E. 968; *Dewing* v. *Hutton,* 48 W. Va. 576, 37 S. E. 670. True, the failure to call a mere corroborating witness has been said not to justify an adverse inference. *Montgomery* v. *Chesapeake & Potomac Telephone Co.*, 121 W. Va. 163, 3 S. E. 2d 58; *Schiffler* v. *Kissel*, 103 W. Va. 545, 138 S. E. 107. But to make a party immune against the adverse inference naturally arising from not calling a witness, the evidence already introduced must be clear, definite, and not subject to suspicion.

The trial chancellor is not bound by direct evidence which is weak, uncertain, vague or otherwise questionable. *Fisher* v. *Berwind-White Coal Mining Company*, 64 W. Va. 304, 61 S. E. 910; *Mullens* v. *Lilly*, 123 W. Va. 182, 13 S. E. 2d 634; *Bradshaw* v. *Farnsworth*, 65 W. Va. 28, 63 S. E. 755. A chancellor is the judge of the creditability of witnesses,and is no more bound by suspicious or questionable testimony, although uncontradicted, than is a jury. *Maloratsky* v. *Rosenblat*, 129 N. J. Equity 64, 18 A. 2d 263; *Slater* v. *Hamacher*, 15 D. C. App. 558. This is particularly true where the adversary is deceased, or has become incompetent at the time of the institution of the suit. *Cooper* v. *Cooper*, 65 W. Va. 712, 64 S. E. 927. The chancellor's appraisal of testimony taken in his presence is entitled to special respect. *Norfolk County* v. *City of*

*Portsmouth*, 124 Va. 639, 98 S. E. 755. Therefore, this Court cannot say that the chancellor erred in refusing to accept the testimony offered on behalf of the plaintiff as amounting to a clear, positive and unequivocal showing that the plaintiff had definitely accepted the option contained in his lease and had sufficiently proffered performance on his part under the terms thereof. *Crouch* v. *Crouch*, 124 W. Va. 331, 20 S. E. 2d 169; *William C. Atwater & Co.* v. *Fall River Pocahontas Collieries Co.*, 119 W. Va. 549, 195 S. E. 99; *Meyers* v. *Washington Heights Land Co.*, 107 W. Va. 632, 149 S. E. 819; *Baker* v. *Jackson*, 65 W. Va. 282, 64 S. E. 32.

Nor was the option to purchase extended by the holding over by the plaintiff after the expiration of the term of the lease. This option, while contained in a written lease, was no part of the lease proper, and was expressly limited to "the said period of two years from date, hereof", and the lease contained no provision for its extension or renewal. The lessee, therefore, could not extend this period by the mere holding over and paying rent. And the occupancy of the premises, at the time of bringing suit, was not on the terms of the original lease, but for a different rental. *Friederang* v. *Ruth Aldo Co.*, 191 N. Y. S. 401, 199 App. Div. 127.

The eviction of the plaintiff was not justified by pleading or proof, and to this extent only we find the action of the chancellor erroneous. The decree appealed from will, therefore, be modified accordingly and otherwise will be affirmed.

*Modified and affirmed.*

LOVINS, JUDGE, dissenting:

I respectfully disagree with the conclusions reached in the majority opinion.

I think the deed from Napper and wife to Rice and the agreement by which Rice agreed to reconvey to Napper clearly established that the transaction constituted either a mortgage or conditional sale, and the bill of complaint

is framed on those alternative propositions. I agree, however, that if there is no debt there can be no mortgage. The oral proof of a debt in this case is so meager as to be almost non-existent, but on looking to the provisions of the agreement between Napper and Rice it is plain to me that they intended to create the relation of debtor and creditor, which intention determines the character of the transaction. *Gibson* v. *Hopkins,* 80 W. Va. 756, 757, 93 S. E. 826. "In case of doubt however, a court of equity will always lean in favor of a mortgage rather than a conditional sale." *Davis, Committee* v. *Demming et al.,* 12 W. Va. 246, 281; *Thacker* v. *Morris,* 52 W. Va. 220, 223, 43 S. E. 141.

It has been held by this Court "that where land is conveyed by debtor to creditor, to secure the repayment of a loan of money, and the borrower makes a deed absolute to the lender, but with a collateral contract or agreement for the repurchase of the property, the transaction constitutes a mortgage, and not an absolute sale." *Mankin* v. *Dickinson,* 76 W. Va. 128, 131, 85 S. E. 74, and cases cited. However, it was held in the *Mankin* case that the circumstances there considered did not justify a holding that a mortgage existed. The majority opinion holds that the relation of debtor and creditor did not exist between Napper and Rice, but, as indicated above, I believe that the written agreement and the evidence are sufficient to establish that relation.

Waiving the question whether the transaction here constituted a mortgage or a conditional sale, the majority opinion holds that the transaction between Napper and Rice constituted a conditional sale, and that the evidence on behalf of the plaintiff is not sufficient to show compliance on Napper's part with the condition. Authorities are cited in the majority opinion for the proposition that a contract for the conveyance of land must be proved by evidence "which is clear, full and free of suspicion", otherwise specific performance will be denied. I agree with that statement, but on examination of the authorities cited, it will be found that the rule announced therein

relates to proof of the terms of a parol contract for the sale and conveyance of land. In this case the agreement to reconvey to Napper is written, and its provisions and terms are neither denied nor questioned. We are here concerned with oral proof of compliance with the condition of the contract rather than its existence or terms. There is no question here of establishing a parol contract by proof, and I am of opinion that the rigorous rule announced in the majority opinion is inapplicable to the facts disclosed by this record, and that a preponderance of the evidence is sufficient to establish the fact that Napper offered to repurchase the land from Rice.

We have the undisputed testimony of one witness that Napper exercised his option. Further, the same fact was elicited by defendants' counsel on cross-examination of Napper who testified that he made an offer to pay Rice, and that Rice refused to accept.

The trial chancellor by a written opinion made a part of the record found that the evidence was not sufficient to establish tender of the sum due from Napper to Rice. Formal tender was unnecessary for the acceptance and exercise of the option by Napper. It is immaterial whether an actual tender of the amount due Rice was made by Napper. The question here is: Did Napper accept the written offer to resell? The record does not disclose that this specific question was resolved by the trial chancellor.

"Courts are not required to believe that which is contrary to human experience and the laws of nature, or which they judicially know to be incredible * * *." *Norfolk & W. R. Co.* v. *Crowe*, 110 Va. 798, 805, 67 S. E. 518; *Owen* v. *Power Co.*, 78 W. Va. 596, 610, 89 S. E. 262, 268; *Acree* v. *Pipe Line Co.*, 122 W. Va. 242, 246, 8 S. E. 2d 186. The testimony introduced to show the exercise of the option by Napper is neither contrary to human experience or the laws of nature, nor can it be said to be incredible. It is true that where a chancellor makes a finding on conflicting evidence and such finding is not against the preponderance of the evidence or clearly wrong this Court will not set aside such finding. The majority opinion lays

down a somewhat different rule in the language following: "The trial chancellor is not bound by direct evidence which is weak, uncertain, vague or otherwise questionable. *Fisher* v. *Berwind-White Coal Mining Company*, 64 W. Va. 304, 61 S. E. 910; *Mullens* v. *Lilly*, 123 W. Va. 182, 13 S. E. 2d 634; *Bradshaw* v. *Farnsworth*, 65 W. Va. 28, 63 S. E. 755." An examination of the opinions of the Court in the cases just cited will disclose that it was there held that a finding of fact on conflicting evidence by a trial chancellor supported by the evidence would not be disturbed by this Court unless manifestly wrong, and I find no support therein for the rule above quoted.

I am of opinion that there was sufficient evidence to establish a compliance with the condition of the contract, and I therefore would reverse the decree of the Circuit Court of Raleigh County.